[Crim. No. 19470. Second Dist., Div. Five. Nov. 15, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
MADELINE BLANCHE MORTON, Defendant and Appellant.

## COUNSEL

Earl H. Fagin, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Barbara T. King, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**STEPHENS, J.**—Defendant was charged by information with possession of marijuana (Health & Saf. Code, § 11530). She pleaded not guilty. Motions under Penal Code sections 995 and 1538.5 were denied. Defendant duly waived jury trial and submitted the cause on the transcript of the preliminary hearing. Defendant was found guilty and sentenced to 30 days in the county jail. Sentence was suspended, and she was placed on one

year's probation, subject to specified conditions. She appeals from the judgment (order granting probation).

The evidence adduced at the preliminary hearing was as follows: Officer Rose of the Los Angeles Police Department, while on patrol, responded to a radio call reporting a possible drug overdose and requesting an ambulance at an address within his jurisdiction. Upon arriving at the given address, the officer spoke with a Mr. Salter, who told the officer that he and his girlfriend (the defendant) were breaking up and that she had taken an overdose of pills from a bottle, which Salter handed to the officer. There was one pill remaining in the bottle, and there was evidence that the pills were acquired by prescription. In addition to the bottle (and its single pill) Salter gave Officer Rose a woman's purse, stating that it belonged to the defendant. Thereafter, the officer proceeded to the hospital, where he found the defendant to be still in an unconscious condition. Unable to interview her, he participated in the inventory of the purse. It was in the process of this inventorying that the contraband in question, and which it is now claimed should have been suppressed under Penal Code section 1538.5, came to light.

During the section 1538.5 hearing, the officer testified as follows in response to questioning by the deputy district attorney:

"Q And when you got to the hospital, what did you do with the purse, and what did you do as far as the defendant was concerned?

"A As we arrived at the hospital, we conducted an inventory of the purse's contents.

"Q And what was the purpose of that?

"A The purpose of this is to make sure all property in the victim's purse is maintained in order, so none of it will come up missing.

"Q And did you inventory all the property that was in the purse, rather than any specific variety of property?

"A That is correct."

At the time the inventory was taken, the officer was not looking for evidence of any law violation, and defendant was not under arrest. In ruling on the motion to suppress, the court stated that it was certain that the People were not relying on any ostensible consent given by Salter to validate the search. At the preliminary hearing, the testimony of Officer Rose relative to the same process of inventorying the contents of the purse was as follows (in response to questioning by the deputy district attorney):

"Q Officer, why did you begin searching the purse?

"A Again, it's customary to — along with the nurse at the hospital, to check the purse contents so that they can seal the property. In other words, they seal the property to make sure nothing is missing out of it when she's released from the hospital."

From the quoted testimony, it is inferable that the inventory at the hospital was conducted either by, or at least in conjunction with, a nurse, and under hospital requirements or rules. It was not a "law enforcement officer's search," even though the officer participated therein.

It is the contention of defendant that the contraband which was the result of the inventory of the purse was the product of an illegal search and should have been suppressed; that had it been suppressed, there would be no corpus delicti of the offense charged. We do not agree that the inventory constituted an illegal search under the facts of this case. *People* v. *Gonzales,* 182 Cal.App.2d 276 [5 Cal.Rptr. 920] presents a persuasive analogy. In that case, the court approved a search of the defendant's clothing in the course of accomplishing somewhat the same type of inventory as here involved. In the recent case of *Mozzeti* v. *Superior Court,* 4 Cal.3d 699, 709, [94 Cal.Rptr. 412, 484 P.2d 84], the court said: "It is apparent that the court in *Gonzales* did not ground its holding on an analysis of the law of bailments and the duty of an involuntary bailee. But, in any event, the circumstances in *Gonzales,* involving hospital and not law enforcement personnel, are plainly distinguishable from those attendant in police inventory searches. The clothing of an unconscious man brought to a hospital of necessity must be taken from his person to permit medical treatment. Thus, hospital personnel must store the clothing and its contents temporarily for safekeeping. The problem of automobiles taken into police custody is entirely different." In the *Gonzales* case, the victim had a wallet in his possession, and its contents, which were inventoried, included some of the contraband for the possession of which that defendant was subsequently prosecuted. We see no distinction between the right to inventory a man's wallet and the same right to inventory a woman's purse; both, wallets and purses, are susceptible to easy theft of their contents under the instant circumstances, and neither is readily secured except in such manner as would reasonably protect the valuables which they could be expected to contain.

There is an additional rationale which causes us to differentiate the instant case (and cases such as *Gonzales*) from *Mozzetti,* and that is the factor of continuity of control and safekeeping. In *Mozzetti,* after the police "secured" the vehicle and its contents, and presumably had the car impounded, the control and safekeeping at all times remained the responsi-

bility of the police, albeit after its impounding the storage operator acted as the agent for the police for the limited purpose of that storage. Where, however, as in the instant case, the officer transfers possession, control, and thereafter responsibility for safekeeping to a third party, we see the propriety of the inventory for the purpose of police protection against unwarranted claims of even the most minimal responsibility for safekeeping. It is the transfer of responsibility which to us marks the distinction between the rule of *Gonzales* and that of *Mozzetti*.

The officer's omission of an inventory at the time defendant's boyfriend handed the purse to him is consistent with an inference that at that juncture he anticipated that he would meet an owner who would have regained her consciousness by the time he reached the hospital. ■ The evidence adduced in the section 1538.5 hearing, susceptible of alternate inferences, should be construed in the light most favorable to the People where the motion has been denied. (Cf. *People* v. *Teale,* 70 Cal.2d 497, 505 [75 Cal. Rptr. 172, 450 P.2d 564]; *People* v. *West,* 3 Cal.3d 595, 602 [91 Cal.Rptr. 385, 477 P.2d 409].)

■ The second contention of defendant is that the court committed error in finding the contraband to have been in the possession of defendant. This is a factual conclusion drawn by the trial court. The fact of ownership of the purse is not contested, and the circumstances involved in the transfer of possession from Salter to Officer Rose provided evidence of continuity of safekeeping, and it was for the court to draw the conclusion of ownership as to the contents of the purse, including the contraband found therein.

The judgment is affirmed.

Kaus, P. J., and Aiso, J., concurred.