[Crim. No. 16486. In Bank. Feb. 22, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
LEROY TRIGGS, Defendant and Appellant.

## Counsel

Herbert M. Porter and Barry T. Simons for Defendant and Appellant.

A. L. Wirin, Fred Okrand and Laurence R. Sperber as Amici Curiae on behalf of Defendant and Appellant.

Evelle J. Younger, Attorney General, Herbert L. Ashby and Edward A. Hinz, Jr., Chief Assistant Attorneys General, William E. James, Assistant Attorney General, James H. Kline and Douglas B. Noble. Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**WRIGHT, C. J.**—Defendant appeals from a judgment (order granting probation) of conviction of oral copulation. (Pen. Code, § 288a.)[1] The sole witness at the preliminary hearing was the arresting officer, who testified as to his observations of defendant from a clandestine vantage point. Defendant made timely objection to the admissibility of the officer's testimony. Following denial of his motion to dismiss the information (§ 995) defendant waived jury trial and agreed to the submission of the case on the evidence appearing in the transcript of the preliminary hearing.[2] De-

---

[1] Unless otherwise indicated, all section references are to the Penal Code.

[2] Defendant failed to make a section 1538.5 motion to suppress prior to trial but did seek to make a motion to suppress at trial (§ 1538.5, subd. (h)) in order to make certain that the objection to the testimony made at the preliminary hearing was preserved on appeal despite the submission of the case on the transcript of the preliminary hearing. As the trial court specifically addressed itself to defendant's argument for suppression when the court delivered its judgment, it appears that the court did entertain the section 1538.5 motion made at trial. Although the People objected at trial to the court's consideration of the motion, they do not maintain that we are precluded from considering defendant's claim of illegal search and seizure on appeal.

The 1970 amendment to section 1538.5 (subd. (h)) removed the trial court's prior discretion to consider a section 1538.5 motion first made at the time of trial. (Stats. 1970, ch. 1441, p. 2800, § 1.5.) A section 1538.5 motion may now be made at trial only upon a showing of good cause why the opportunity to make the motion did not exist prior to trial. The restriction imposed by the 1970 amendment, however, is a limitation only on preconviction challenges of the admissibility of the evidence. (See *People* v. *Medina* (1972) 6 Cal.3d 484 [99 Cal.Rptr. 630, 492 P.2d 686]; see also *Thompson* v. *Superior Court* (1968) 262 Cal.App.2d 98, 106-107 [68 Cal.Rptr. 530].) "A defendant may seek further review of the validity of a search or seizure on appeal from a conviction in a criminal case . . . providing that at some stage of the proceedings prior to conviction he has moved for the return of property or the suppression of the evidence." (§ 1538.5, subd. (m).)

We deem defendant's motion to strike Officers Aldahl's testimony at the prelim-

fendant was found guilty and was placed on probation. Among the conditions prescribed in the order granting probation were that defendant serve 30 days in the county jail and pay a fine of $300. He was released on his own recognizance (§ 1318) pending disposition of his appeal.

Defendant's sole allegation of error on appeal is the failure to suppress the arresting officer's testimony, which he contends was the intangible fruit of an illegal search and hence was admitted into evidence in violation of his rights under the United States Constitution (4th and 14th Amends.) and the California Constitution (art. I, § 19). We conclude that the evidence used to convict defendant must be suppressed.

On the afternoon of December 19, 1970, Los Angeles Police Officer Richard Aldahl was on plainclothes patrol in Arroyo Seco Park in the City of Los Angeles. Accompanying Officer Aldahl were two fellow plainclothed officers. Officer Aldahl observed defendant enter the men's room in the park. About 10 minutes later, David Crockett was observed entering the same men's room. Defendant had not yet reappeared. About five minutes after Crockett's entrance into the men's room, the three officers entered the "plumbing access area" of the park's restroom building.[3] From a vantage point connected with this area Officer Aldahl was able to observe defendant orally copulating Crockett, while both Crockett and defendant were within a doorless toilet stall.[4]

Officer Aldahl testified at the preliminary hearing that he had entered

---

inary hearing as equivalent to a motion to suppress evidence within the meaning of section 1538.5 (subd. (m)). In any case, defendant is entitled to review of the denial of his section 995 motion on appeal from a judgment of conviction. (Pen. Code, §§ 1235, 1237; *People* v. *Taylor* (1967) 250 Cal.App.2d 367, 370 [58 Cal.Rptr. 269].)

[3]The plumbing access area of the Arroyo Seco Park restrooms lies between the men's room and the women's room, which are located back to back with the commodes linked to a common plumbing "tree." The said area thus affords accessibility to the plumbing running from each individual commode through the wall of the men's and women's restrooms respectively and observation from a vantage point in the area may be made of activities within both the men's and women's restrooms.

[4]Defendant was sitting on the commode in the stall furthest from the door entering into the men's room. Over the row of doorless stalls in the restroom were two vents set flush in the ceiling approximately eight feet above the floor. These apertures were covered by light wire screening and opened into the attic area between the ceiling of the men's room and the roof of the restroom building. From the plumbing access area Officer Aldahl was able to thrust his head into this attic area and so look down through the vents into the toilet stalls of the men's room. As Officer Aldahl peered down he could see defendant committing the crime of which he was convicted approximately five feet below him and to his left. Although other persons had used the restroom during the 15 minutes following defendant's entrance, no one but defendant and Crockett were present when Officer Aldahl made his observation.

the plumbing access area at the park about 50 times for the purpose of ascertaining if any criminal conduct was occurring in the adjacent men's room. Other than entering the restroom at a 10-minute interval, a circumstance the officer had seen many times before in an innocent context, neither defendant nor Crockett had committed any suspicious acts. Officer Aldahl agreed with defense counsel that he had entered the plumbing access area on this occasion "to make an observation in case there was a crime committed."

This court last considered the legality of clandestine restroom observations by policemen in *Bielicki* v. *Superior Court* (1962) 57 Cal.2d 602 [21 Cal.Rptr. 552, 371 P.2d 288] and *Britt* v. *Superior Court* (1962) 58 Cal.2d 469 [24 Cal.Rptr. 849, 374 P.2d 817]. In *Bielicki,* a policeman used a pipe running through the ceiling to the roof to observe homosexual conduct inside the fully-enclosed stall of a pay toilet in an amusement park restroom. The pipe had been installed purely for observational purposes in response to the park owner's complaint to the vice squad. The policeman's observation in *Bielicki* was held by a unanimous court to be a search. We held that such constituted a search because only by means of the clandestine vantage point had the policeman "secretly observed activities of petitioners which no member of the public could have seen, as they carried on within the confines of toilet booths each enclosed by three walls and a door." It was "undisputed that the activities of petitioners witnessed by [the arresting officer] were not 'in plain sight' or 'readily visible and accessible' . . . . " (57 Cal.2d at p. 607.) We further held that the search was unreasonable because the officer had begun his observations on the night in question with "no reasonable cause to arrest these petitioners. . . . [H]e spied on innocent and guilty alike. Such a practice amounts to a general exploratory search conducted solely to find evidence of guilt, a practice condemned both by federal law [citatons omitted] and by the law of this state [citations omitted]." (57 Cal.2d at pp. 605-606.)

Lest *Bielicki* receive too restrictive a reading this court, again acting unanimously, decided *Britt* five months after *Bielicki*. The facts in *Britt* were substantially identical to those presented in the case at bench. The arresting officer had been stationed in the space between the ceiling of a department store restroom and the floor above. He was able to look down through two vents in the ceiling upon the toilet stalls in the men's room below. Each stall was enclosed by partitions and a door, but the enclosures stopped 8 to 12 inches from the floor. The arresting officer observed from his position an act of oral copulation by Britt and his codefendant who

occupied adjacent stalls and committed the crime from kneeling positions through the gap between the partitions and the floor.

The People attempted to distinguish *Britt* from *Bielicki* on three points: first, the vents in *Britt* through which the officer peered had originally been installed for a legitimate purpose; second, the toilets in *Britt* were free rather than pay toilets; and third, the activities observed in *Britt* were in "plain view" because of the gap between the partitions and the floor. These arguments were rejected: "The crucial fact in *Bielicki* was neither the manner of observation *alone* nor the place of commission *alone,* but rather the manner in which the police observed a place—and persons in that place—which is ordinarily understood to afford personal privacy to individual occupants." (58 Cal.2d at p. 472.)

Because the decisions in *Bielicki* and *Britt* were justified in part as protecting "expectations of privacy," several subsequent appellate decisions have treated the presence or absence of a door to a toilet stall in which criminal conduct occurs as determinative of the legality of clandestine observation of that stall. Under such a concept of the law, it was reasoned that there is a presumption that conduct which *could* have been viewed by an officer from a place where the public had a right to be *could not* reasonably have been expected to be private. Language to the contrary in *Britt* which placed as much emphasis on the *means of observation* as on the place observed has been disregarded and *Bielicki* has been limited to its facts in this line of cases. (*People* v. *Crafts* (1970) 13 Cal.App.3d 457 [91 Cal.Rptr. 563]; *People* v. *Heath* (1968) 266 Cal.App.2d 754 [72 Cal.Rptr. 457]; *People* v. *Roberts* (1967) 256 Cal.App.2d 488 [64 Cal. Rptr. 70]; *People* v. *Maldonado* (1966) 240 Cal.App.2d 812 [50 Cal. Rptr. 45]; *People* v. *Hensel* (1965) 233 Cal.App.2d 834 [43 Cal.Rptr. 865]; *People* v. *Young* (1963) 214 Cal.App.2d 131 [29 Cal.Rptr. 492]; *People* v. *Norton* (1962) 209 Cal.App.2d 173 [25 Cal.Rptr. 676].)

In *Crafts,* the last of these "doorless stall" cases, the court concluded that denials of petitions for hearings by this court of such cases indicated our acquiescence in their results and our consequent retreat from *Britt.* *Crafts* was the principal authority relied upon by the court below in denying defendant's motion to suppress.

Preliminarily we declare that our refusal to grant a hearing in a particular case is to be given *no* weight insofar as it might be deemed that we have acquiesced in the law as enunciated in a published opinion of a Court of Appeal when such opinion is in conflict with the law as stated by this court. Our statements of law remain binding on the trial and

appellate courts of this state (*People* v. *McGuire* (1872) 45 Cal. 56, 57-58; *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]) and must be applied wherever the facts of a case are not fairly distinguishable from the facts of the case in which we have declared the applicable principle of law. ■ Our refusal to grant a hearing in any given case must not be deemed a sub silentio overruling of our prior decisions. "The significance of such refusal is no greater than this—that this court does not consider that the interests of justice, or the purposes for which the power [to grant a hearing] was given, require its exercise in the particular case." (*People* v. *Davis* (1905) 147 Cal. 346, 350 [81 P. 718]; see also *Cole* v. *Rush* (1955) 45 Cal.2d 345, 351, fn. 3 [289 P.2d 450, 54 A.L.R.2d 1137].)

The People here urge us to hold that clandestine observation of doorless stalls in public restrooms is not a "search," and hence is not subject to the Fourth Amendment's prohibition of unreasonable searches. This would permit the police to make it a routine practice to observe from hidden vantage points the restroom conduct of the public whenever such activities do not occur within fully enclosed toilet stalls and would permit spying on the "innocent and guilty alike." Most persons using public restrooms have no reason to suspect that a hidden agent of the state will observe them. ■ The expectation of privacy a person has when he enters a restroom is reasonable and is not diminished or destroyed because the toilet stall being used lacks a door.

Reference to expectations of privacy as a Fourth Amendment touchstone received the endorsement of the United States Supreme Court in *Katz* v. *United States* (1968) 389 U.S. 347 [19 L.Ed.2d 576, 88 S.Ct. 507]. ■ Viewed in the light of *Katz,* the standard for determining what is an illegal search is whether defendant's "reasonable expectation of privacy was violated by unreasonable governmental intrusion." (*People* v. *Edwards* (1969) 71 Cal.2d 1096, 1104 [80 Cal.Rptr. 633, 458 P.2d 713]; see also *Mancusi* v. *DeForte* (1968) 392 U.S. 364, 368 [20 L.Ed.2d 1154, 1160, 88 S.Ct. 2120].)

We do not retreat from our decisions in *Bielicki* and *Britt* and under the rationale of those opinions the suppression of the evidence used to convict defendant in the case at bench is required. As previously noted, *Bielicki* holds not only that general exploratory searches for evidence of guilt are violative of basic constitutional guarantees[5] but also that clan-

---

[5]Most search and seizure cases decided by California courts refer both to federal law and to state law. Since many of the cases cited as setting forth "state law" make express reference only to the Fourth Amendment, and neglect mention of the parallel

destine observations of the interior of toilet stalls are searches subject to Fourth Amendment strictures because occupants of toilet stalls can reasonably expect their activities within them to be private. We added in *Britt* that such observation remained a search and hence subject to the Fourth Amendment's ban against exploratory searches, even if the interior of the stall might have been open to view from areas accessible to the public.

The clandestine observations of restrooms does not fall from the purview of the Fourth Amendment merely through the removal of toilet stall doors. ■ We must remember in this regard that "both the United States Constitution and the California Constitution make it emphatically clear that important as efficient law enforcement may be, it is more important that the right of privacy guaranteed by these constitutional provisions be respected. [T]he contention that unreasonable searches and seizures are justified by the necessity of bringing criminals to justice cannot be accepted. It was rejected when the constitutional provisions were adopted and the choice was made that all the people, guilty and innocent alike, should be secure from unreasonable police intrusions, even though some criminals should escape." (*People* v. *Cahan* (1955) 44 Cal.2d 434, 438, 439 [282 P.2d 905, 52 A.L.R.2d 513].)

---

provisions of the California Constitution (art. I, § 19), it is often difficult to determine whether a case was disposed of on the basis of state or federal constitutional law. The issue is, of course, crucial to federal review of our decisions. (*California* v. *Krivda* (1972) 409 U.S. 33 [34 L.Ed.2d 45, 93 S.Ct. 32]; *Mental Hygiene Dept.* v. *Kirchner* (1965) 380 U.S. 194, 198 [13 L.Ed.2d 753, 756, 85 S.Ct. 871].)

In *People* v. *Cahan* (1955) 44 Cal.2d 434, 438 [282 P.2d 905, 50 A.L.R.2d 513], we stated that the "guarantee of personal privacy" set forth in article I, section 19, of the California Constitution is "essentially identical" to the rights secured by the Fourth Amendment. At least since the advent of *Wolf* v. *Colorado* (1949) 338 U.S. 25 [93 L.Ed. 1782, 69 S.Ct. 1359], we have treated the law under article I, section 19, of our state Constitution as "substantially equivalent" to the Supreme Court's construction of the Fourth Amendment. (See *Blair* v. *Pitchess* (1971) 5 Cal.3d 258, 270-271, fn. 6 [96 Cal.Rptr. 42, 486 P.2d 1242, 47 A.L.R.3d 1206].) On at least one occasion, however, we have expressly departed from the federal rule to afford defendants a broader security against unreasonable searches and seizures than that required by the Supreme Court. (See *People* v. *Martin* (1955) 45 Cal.2d 755, 759-761 [290 P.2d 855] [vicarious exclusionary rule].) In interpreting our state Constitution, we of course retain the "power to impose higher standards on searches and seizures than required by the Federal Constitution." (*Cooper* v. *California* (1967) 386 U.S. 58, 62 [17 L.Ed.2d 730, 734, 87 S.Ct. 788].)

Although for the sake of convenience we often refer to constitutional guarantees, both state and federal, against unreasonable searches and seizures under the rubric of "Fourth Amendment" rights, our decision today is based both upon our reading of applicable federal Fourth Amendment law and our own determination of the proper construction of article I, section 19, of the California Constitution. (*People* v. *Krivda* (1973) 8 Cal.3d 623 [105 Cal.Rptr. 521, 504 P.2d 457].)

In seeking to honor reasonable expectations of privacy through our application of search and seizure law, we must consider the expectations of the innocent as well as the guilty. When innocent people are subjected to illegal searches—including when, as here, they do not even know their private parts and bodily functions are being exposed to the gaze of the law—their rights are violated even though such searches turn up no evidence of guilt. Save through the deterrent effect of the exclusionary rule there is little courts can do to protect the constitutional right of persons innocent of any crime to be free of unreasonable searches.

In addition to the constitutional issue previously discussed, the Legislature has recently made a declaration of its own regarding the reasonability of expectations of privacy in restrooms. Section 653n provides in pertinent part: "Any person who installs or who maintains after April 1, 1970, any two-way mirror permitting observation of any restroom, toilet, bathroom, washroom, shower, locker room, fitting room, motel room, or hotel room, is guilty of a misdemeanor.

".     .     .     .     .     .     .     .     .     .     .     .     .     .     .     .     .     .

" 'Two-way mirror' as used in this section means a mirror or other surface which permits any person on one side thereof to see through it under certain conditions of lighting, while any person on the other side thereof or other surface at that time can see only the usual mirror or other surface reflection."

*People* v. *Metcalf* (1971) 22 Cal.App.3d 20 [98 Cal.Rptr. 925], concerned a section 288a violation witnessed by the arresting officer while secreted in a service closet adjacent to a department store restroom. The defendant occupied a doorless toilet stall; his codefendant occupied the corridor running outside the stall. The crime was observed through louvers in the door of the closet in which the arresting officer was hidden. The *Metcalf* court noted and rejected the line of cases departing from the *Bielicki-Britt* rule and reversed Metcalf's conviction, relying on section 653n: "We believe that the enactment of section 653n enunciates a public policy against clandestine observation of public restrooms and renders it reasonable for users thereof to expect that their privacy will not be surreptitiously violated. The method of surveillance employed in this case, in our opinion, violates the spirit and policy considerations which led to the enactment of section 653n and therefore should not be given this court's sanction." (22 Cal.App.3d at p. 23, citing *Katz* v. *United States, supra,* 389 U.S. 347, and *People* v. *Edwards, supra,* 71 Cal.2d 1096.)

We approve of the decision in *Metcalf*. ▆▆▆▆ The public policy declared in section 653n[6] is incompatible with the carte blanche which the People claim for clandestine surveillance of all areas of restrooms not fully enclosed by three walls and a door.[7]

Having concluded the clandestine observation challenged in the case at bench was a search, we reach the issue of the legality of that search. We may assume, without deciding, that the search fell within one of the limited class of searches for which a warrant is not required. (Cf. *Warden* v. *Hayden* (1967) 387 U.S. 294 [18 L.Ed.2d 782, 87 S.Ct. 1642]; *Katz* v. *United States, supra.*) Nevertheless, "[i]n enforcing the Fourth Amendment's prohibition against unreasonable searches and seizures, the [Supreme] Court has insisted upon probable cause as a minimum requirement for a reasonable search permitted by the Constitution." (*Chambers* v. *Maroney* (1970) 399 U.S. 42, 51 [26 L.Ed.2d 419, 428, 90 S.Ct. 1975].) Probable cause exists when at the moment officers make an arrest or conduct a search "the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an

---

[6]Although the legislative history of section 653n is fragmentary, it is clear that the measure did seek to declare and to protect reasonable expectations of privacy. As originally introduced in the Assembly, the bill which resulted in section 653n included a final paragraph (later deleted): "Hotel and motel lobbies or registration rooms and retail salesrooms are specifically declared not to be areas in which persons could reasonably expect to be free from being observed." The phraseology of this disclaimer persuasively suggests that the bill was intended to have the effect we give it today—a declaration of areas within which the public *can* "reasonably expect to be free from being observed." (See Assem. Bill No. 1222 (1969 Reg. Sess., Mar. 25, 1969).)

[7]The Attorney General claims that criminal acts are often committed inside restrooms within plain view of any member of the public who should happen to enter. Under such circumstances, the police need not resort to clandestine observation to apprehend individuals involved in such activities. When law enforcement officers suspect that crimes are being perpetrated, they are as free to enter restrooms as is any member of the public. Should they discover from a location open to the public, the commission of criminal acts, their observation of what is in plain view involves no search, and is not subject to the strictures of the Fourth Amendment. (*United States* v. *Lefkowitz* (1932) 285 U.S. 452, 465 [76 L.Ed. 877, 882, 52 S.Ct. 420, 82 A.L.R. 775]; *Ker* v. *California* (1963) 374 U.S. 23, 43 [10 L.Ed.2d 726, 744, 83 S.Ct. 1623].) But for such observation to be a plain view rather than constituting a search, the officer must have had "a right to be in the position to have that view. . . ." (*Harris* v. *United States* (1968) 390 U.S. 234, 236 [19 L.Ed.2d 1067, 1069, 88 S.Ct. 992].) Unless he has probable cause to search, an officer has no right to retreat to a clandestine position to peer into a restroom, and knowledge gained by or attributable to such clandestine observations suffers from constitutional infirmities which require its exclusion as evidence in a case. To the extent that they are inconsistent with this statement of the law, the post *Bielicki-Britt* cases cited, *ante*, at page 890 are disapproved.

offense." (*Beck* v. *Ohio* (1964) 379 U.S. 89, 91 [13 L.Ed.2d 142, 145, 85 S.Ct. 223].)[8]

■ In the instant case it was conceded by the arresting officer that prior to embarking upon the search defendant had given authorities no cause to suspect him of criminal conduct aside from his prolonged stay in the restroom. It was also conceded that even this arguably suspicious behavior was susceptible to an innocent explanation. Since we have held that "events . . . as consistent with innocent activity as with criminal activity" are insufficient to support the legality of an investigative detention (*Irwin* v. *Superior Court* (1969) 1 Cal.3d 423, 427 [82 Cal.Rptr. 484, 462 P.2d 12]), a fortiori such events cannot afford the police probable cause to search. (See *Terry* v. *Ohio* (1968) 392 U.S. 1, 20-22 [20 L.Ed.2d 889, 905-907, 88 S.Ct. 1868]; *Beck* v. *Ohio, supra.*) "[C]ommon rumor or report, suspicion, or even 'strong reason to suspect' " have historically been inadequate to establish probable cause, and "that principle has survived to this day" in the law of the Fourth Amendment and the law of this state. (*Henry* v. *United States* (1959) 361 U.S. 98, 101 [4 L.Ed.2d 134, 138, 80 S.Ct. 168]; see also *People* v. *Superior Court (Kiefer)* (1971) 3 Cal.3d 807, 813-828 [91 Cal.Rptr. 729, 478 P.2d 449].) Officer Aldahl therefore lacked probable cause to search the toilet stall occupied by defendant. His clandestine observation of defendant, " 'prompted by a general curiosity to ascertain what, if anything,' " was going on within the restroom, was "manifestly exploratory in nature, and violates both the letter and spirit of the Fourth Amendment." (*People* v. *Superior Court (Kiefer), supra,* 3 Cal.3d at p. 831.)

■ Officer Aldahl's testimony as to what he observed was secured as a result of an illegal search (*Badillo* v. *Superior Court* (1956) 46 Cal.2d 269, 271 [294 P.2d 23]), and should have been excluded at trial. (*Mapp* v. *Ohio* (1961) 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684, 84 A.L.R.2d 933]; *People* v *Cahan, supra,* 44 Cal.2d 434.)

The judgment is reversed.

McComb, J., Tobriner, J., Mosk, J., Burke, J., Sullivan, J., and Wood, J.,* concurred.

---

[8]While *Beck* defined probable cause in the context of probable cause to arrest, the same standard applies to probable cause to search. (See *Spinelli* v. *United States* (1969) 393 U.S. 410, 417, fn. 5 [21 L.Ed.2d 637, 644, 89 S.Ct. 584].)

*Assigned by the Chairman of the Judicial Council.