STATE OF NORTH CAROLINA v. JAMES NORFLEET JARRELL AND MONTE MUNOZ ZEPEDA

No. 7426SC811

(Filed 19 February 1975)

1. **Crime Against Nature § 2; Criminal Law § 33— reason for police surveillance — relevancy — harmless error**

   In a prosecution for crime against nature, testimony that officers were maintaining surveillance of the public restroom where the crime allegedly occurred because of numerous complaints concerning "acts being committed in the men's bathroom" was relevant to explain the surveillance of the restroom, although it was irrelevant to prove defendants committed any crime; even if such testimony should have been excluded, its admission was harmless error in the light of the overwhelming evidence of defendants' guilt.

2. **Criminal Law § 84; Searches and Seizures § 1— activities in public area of restroom— photographs and testimony — no illegal search**

   In a crime against nature case, photographs of defendants in a public restroom, taken through a preexisting hole in the restroom ceiling by an officer concealed in the attic of the restroom, and testimony by the officer concerning what he saw while he observed defendants from his concealed position, did not result from an illegal search in violation of defendants' Fourth Amendment rights where defendants were in the open, public area of the room at all times while the officer observed and photographed them, since defendants had no reasonable expectation of privacy in using such a public place for their activities.

3. **Crime Against Nature § 2— acts in public place — constitutionality of statute**

   A state is not prohibited on constitutional grounds from punishing individuals who commit a crime against nature in a public restroom even though the acts are between consenting adults. G.S. 14-177.

State v. Jarrell

**4. Criminal Law § 128; Crime Against Nature § 2— motion for mistrial — remark of prospective juror — improper question by solicitor**

In this prosecution for crime against nature, the trial court did not err in the denial of defendants' motion for mistrial made when a prospective juror replied during questioning that he could not give anyone a fair trial as long as one defendant's counsel was involved where the prospective juror was excused by the court; nor did the court err in the denial of a motion for mistrial made when the prosecutor, in cross-examining one defendant's former Sunday School teacher who testified as to that defendant's good character, asked whether he taught defendant "about Sodom and Gomorrah," where the court sustained an objection to the question and directed the jury not to consider it.

APPEAL by defendants from *Falls, Judge.* Judgments entered 3 April 1974 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 14 November 1974.

Defendants were tried on their pleas of not guilty to separate indictments which charged that each committed the crime against nature with the other, the two cases being consolidated for trial without objection. The State's evidence showed: After receiving complaints concerning activities at a public restroom in Freedom Park, a public park in Charlotte, N. C., Officer Cobb of the Charlotte Police Department secreted himself in the attic of the restroom. From this position he could see into the restroom through a hole in the ceiling. At approximately 11:30 a.m. on 8 May 1973 he observed and photographed defendants while they performed an act of oral copulation. The act occurred near a window in the public area of the restroom, with defendant Zepeda standing and looking out the window and defendant Jarrell kneeling on the floor and out of sight from outside the building. No person other than defendants was in the restroom at the time. Officer Cobb, via a prearranged radio signal, summoned other nearby officers, who entered the restroom and arrested the defendants.

Defendant Zepeda testified that the act occurred but that he submitted to it only because he was petrified with fear. Jarrell did not testify but presented witnesses who testified to his good character.

The jury found each defendant guilty, and from judgments imposing prison sentences, each defendant appealed.

*Attorney General Carson by Assistant Attorney General Edwin M. Speas, Jr. for the State.*

*Craighill, Rendleman & Clarkson by Hugh B. Campbell, Jr. for defendant appellant Jarrell.*

*Casey & Daly, P.A., by G.S. Daly, and William G. Jones for defendant appellant Zepeda.*

PARKER, Judge.

[1]  Defendants first contend that the trial court erred in overruling their objections to testimony of Officer Cobb as to the reasons the police were maintaining surveillance of the restroom. Cobb testified that he and other officers had received numerous complaints concerning "acts being committed in the men's bathroom." Defendants contend that this testimony, admitted over objection, was irrelevant on the issue of their guilt and had the sole effect of creating prejudice against them in the minds of the jurors. In this connection we note initially that in the testimony complained of Officer Cobb did not further characterize or explain to the jury what he meant by the phrase, "acts being committed in the men's bathroom," and only by intimation could the jury guess that the acts referred to involved sexual misconduct. Furthermore, the challenged testimony did serve to explain the surveillance of the restroom and was relevant for that purpose. It may be granted that it was irrelevant to prove that defendants committed any crime, but even so, and even if it be further granted that the challenged testimony should have been excluded, nevertheless in this case the properly admitted evidence of guilt was so overwhelming and the prejudicial effect of the challenged evidence was so insignificant by comparison, that it is clear that error in admitting the evidence was harmless beyond any reasonable doubt. Where that is the case, reversal is not required even when the error complained of involves allowing introduction of evidence in violation of a defendant's constitutional rights. *State v. Brinson,* 277 N.C. 286, 177 S.E. 2d 398 (1970). Still less is a reversal and new trial required where, as in the case now before us, the error complained of involves only the allowance of testimony of questionable relevancy. The assignment of error which is the basis of defendants' first contention, being assignment of error No. 8, is overruled.

[2]   Defendants next contend it was error to deny their motions to suppress and to allow into evidence the photographs taken of them by Officer Cobb and his testimony concerning what he saw while he observed them from his position concealed in the restroom attic. They contend that this evidence should have been suppressed as being the product of an illegal search violative of their Fourth Amendment rights. We do not agree. At all times while Officer Cobb observed the defendants and when he photographed them through a preexisting hole in the restroom ceiling, defendants were in the open, public area of the room. At no time did he observe or photograph either of them in an enclosed toilet stall, a place which might ordinarily be understood to afford some degree of personal privacy to an individual occupant. Therefore, decisions holding an illegal search occurs when the police surreptitiously observe persons in an enclosed toilet stall, *Bielicki v. Superior Court,* 57 Cal. 2d 602, 371 P. 2d 288, 21 Cal. Rptr. 552 (1962) ; *Britt v. Superior Court,* 58 Cal. 2d 469, 374 P. 2d 817, 24 Cal. Rptr. 849 (1962) ; *Brown v. State,* 3 Md. App. 90, 238 A. 2d 147 (1968) ; *State v. Bryant,* 287 Minn. 205, 177 N.W. 2d 800 (1970) ; *contra, Smayda v. United States,* 352 F. 2d 251 (9th Cir. 1965), *cert. denied,* 382 U.S. 981 (1966), are not here applicable. Defendants cite and rely upon *People v. Triggs,* 8 Cal. 3d 884, 506 P. 2d 232, 106 Cal. Rptr. 408 (1973), for the proposition that it is also illegal to maintain surveillance over the open areas of a public toilet room. In that case the activities observed took place in a doorless toilet stall and could have been seen by anyone who walked into the public area of the restroom. In holding the surveillance in that case to be illegal, the California Supreme Court relied in part upon the public policy as declared in an act adopted by the California Legislature. In their brief defendants also rely heavily upon *Katz v. United States,* 389 U.S. 347, 19 L.Ed. 2d 576, 88 S.Ct. 507 (1967) to sustain their position that an unconstitutional search occurred in the present case. We do not so broadly read the holding in *Katz.* It is true that the majority opinion in *Katz* contains the statement that "the Fourth Amendment protects people, not places," 389 U.S. at 351, but that broad statement furnishes little assistance in determining what human activities occurring in what places and under what circumstances are entitled to be constitutionally protected from unreasonable governmental intrusion. The sentence appears in the portion of the majority opinion in which the Court was seeking to shift emphasis away from the concept of "constitutionally

protected areas" as a "talismanic solution to every Fourth
Amendment problem," and to focus attention more upon what a
person might be doing in a particular area and his reasonable
expectation of privacy for his activity. 389 U.S. at 351, n. 9.
Obviously, all human activities must occur in some "area," and
as Justice Harlan pointed out in his concurring opinion in
*Katz*, the answer to the question of what protection the Fourth
Amendment affords to people, generally requires reference to a
"place." We find some decisional assistance from Justice Har-
lan's further statement:

> "My understanding of the rule that has emerged from
> prior decisions is that there is a twofold requirement, first
> that a person have exhibited an actual (subjective) expec-
> tation of privacy and, second, that the expectation be one
> that society is prepared to recognize as 'reasonable.'" 389
> U.S. 347, 361, 19 L.Ed. 2d 576, 587-88, 88 S.Ct. 507, 516.

In our opinion the reasonable expectation of privacy of one
who enters and places a phone call from a public pay telephone
booth and the societal interests involved in protecting that ex-
pectation from surreptitious invasion by the police are of such
vastly different order from the expectation of privacy and the
interests involved of one who is in the open public area of a
public restroom, that the actual holding in *Katz* has little rele-
vance to the present case. Here, the police officer, from a posi-
tion where he had a right to be, was observing activities taking
place in the open, public area of a public building, which it was
his duty to protect. By using such a public place for their activi-
ties, defendants had no such expectation of privacy as society, or
at least as this Court, is prepared to recognize as "reasonable."
On the contrary, they risked observation, and we find here no con-
stitutional right in defendants to demand that such observation
be made only by some person of whose presence they were
aware. In our opinion defendants here did not acquire the right
to insulate their activities with Fourth Amendment protection
merely by attempting to maintain a lookout for persons who
might enter the restroom. We find no error in admitting into
evidence the photographs and the testimony of Officer Cobb.
Support for this result is furnished by *State v. Coyle,* 181 So.
2d 671 (Fla. Dist. Ct. App. 1966) and *Poore v. State of Ohio,*
243 F. Supp. 777 (N.D. Ohio 1965).

[3]. Defendants next contend that the trial court erred and
infringed their constitutional rights by failing to limit G.S.

14-177 "so that it would not punish private sexual acts between consenting adults which did not disturb others." No authority cited by defendants and none of which we are aware prohibits a state on constitutional grounds from punishing under a statute such as G.S. 14-177 individuals who commit the proscribed act in a public restroom.

[4]   Finally, defendants contend that the court abused its discretion in denying their motions for mistrial. The first of these motions was made on the grounds that a prospective juror replied during questioning that he could not give anyone a fair trial as long as Zepeda's counsel was involved. The record shows that this prospective juror was then excused by the court and that jury selection was thereafter completed and the jury impaneled. In their brief defendants' counsel candidly admit that the incident to which their first motion for mistrial was directed "standing alone would not merit reversal," and that it was "not beyond the expectable rough-and-tumble of a criminal trial." The second motion for mistrial was made when the prosecuting attorney, in cross-examining Zepeda's former Sunday School teacher who testified to Zepeda's good charatcer, asked, "Teach him Genesis, about Sodom and Gomorrah?" The court promptly sustained defendants' objection and instructed the jury not to consider the question, but denied defendants' motion for mistrial. As a general rule, a motion for mistrial is addressed to the discretion of the trial judge, and his ruling thereon is not reviewable on appeal in the absence of a showing of an abuse of discretion. *State v. Daye,* 13 N.C. App. 435, 185 S.E. 2d 595 (1972), *aff'd,* 281 N.C. 592, 189 S.E. 2d 481 (1972). The record in the present case shows no abuse of the trial court's discretion.

In defendants' trial and in the judgments appealed from we find

No error.

Chief Judge BROCK and Judge HEDRICK concur.