[Crim. No. 3889. Fifth Dist. June 10, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
STEPHEN GIBSON SAAM, Defendant and Appellant.

COUNSEL

Richard A. Carsel, Public Defender, and James B. Maguire III, Deputy Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Eddie T. Keller and W. Scott Thorpe, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

FRANSON, J.—

### INTRODUCTION

This appeal tests the legality of a seizure of the contents of a locked toolbox found in a garage during the execution of a valid search warrant. The toolbox was opened by means of a key which had been surreptitiously taken from the person of appellant who was sleeping on a couch in the living room. Although we recognize the seizure of the key was illegal, we nevertheless conclude that the officer's authority to search the toolbox was independently derived from the search warrant and was not nullified by the seizure of the key. We also reject appellant's other contentions and affirm the judgment.

### STATEMENT OF THE CASE

Appellant was charged by complaint with violating Health and Safety Code section 11378, possession of methamphetamines for purpose of sale. At the preliminary hearing, appellant's Penal Code section 1538.5 motion to suppress the evidence seized pursuant to the search warrant was granted, and the complaint was dismissed.

The People then sought and obtained a grand jury indictment charging appellant with the same offense. At his arraignment in the superior court, appellant entered a not guilty plea to the indictment and again moved to suppress the evidence on the ground that it had been illegally seized. He also moved to set aside the indictment under Penal Code section 995 on the ground the district attorney had failed to disclose to the grand jury that the original complaint against appellant had been dis-

missed by the magistrate at the preliminary hearing. Both motions were submitted to the court on the basis of the earlier preliminary hearing, the grand jury proceedings, and the search warrant and affidavit. The motions were denied.

Appellant then submitted the matter for trial on the grand jury transcript. He was found guilty and was placed on probation for five years on the condition he serve one year in the county jail. A timely appeal was filed.

FACTS

On July 25, 1977, Officer Curtis of the San Luis Obispo County Sheriff's Department obtained a search warrant for the residence at 8880 Arcade Road in Atascadero, California, and for the person of Rick Morrison. The warrant was based on information from an informant that Rick Morrison, who was living at 8880 Arcade Road, had been involved in a recent burglary and drug theft at the Atascadero Medical Clinic, a pharmacy. Officer Curtis was accompanied by two other deputy sheriffs and a deputy district attorney.

The officers and the deputy district attorney arrived at 8880 Arcade to conduct the search. The person named in the warrant, Rick Morrison, answered the door and allowed the officers to enter the living room where they found appellant asleep on the couch. Besides appellant and Morrison, Roy Hilton was also in the room. At that time the officers did not know who appellant was but they later learned that he also resided at the residence.

A search was conducted of the house for the items listed as stolen property on the warrant. Finding nothing in the house, the officers proceeded to the garage where they discovered several items identified as being stolen from the medical clinic. They also found a padlocked toolbox inside the garage. Officer Curtis returned to the living room and asked whose toolbox it was, and Hilton and Morrison said it belonged to the appellant. They indicated that the key to the box was on a snap ring attached to appellant's belt. Officer Curtis had noticed that the lock on the toolbox was an "Ace-type," and he observed two "Ace keys" on appellant's key ring. Curtis then removed the key ring from appellant's belt without awakening appellant. One of the keys unlocked the toolbox, and inside the box the officers found a white powder which they believed was either cocaine or heroin, baggies, measuring spoons and other items. Appellant was then placed under arrest.

A chemical analysis of the material found inside the baggies in the toolbox revealed that the substance was methamphetamine.

### THE ILLEGAL SEIZURE OF THE KEY FROM APPELLANT'S PERSON DID NOT INVALIDATE THE SEARCH OF THE TOOLBOX

■ We first dispose of respondent's contention that the seizure of appellant's keys was lawful under the "plain sight" doctrine. The search warrant did not authorize a search of appellant's person nor did the warrant list the keys as an item to be seized; hence, the People have the burden of justifying the seizure of the keys as a warrantless search. Since the keys were neither contraband nor the fruits nor instrumentalities of any crime, the fact that they were in plain view is irrelevant. Officer Curtis admitted he had no probable cause independent of the warrant to believe that drugs were in the toolbox. There were no exigent circumstances which would justify the search of the box; the officers could easily have secured the toolbox while they sought a warrant to search the box. We therefore must conclude that the seizure of the keys from appellant's person was unlawful.

■ If a warrant sufficiently describes the premises to be searched and the items to be seized, the police are justified in the execution of the warrant to search personal effects and receptacles located on the premises and belonging to the persons occupying the premises if the personal effects and receptacles might contain the items described in the warrant. (See LaFave, Search and Seizure (1978) Scope and Intensity of Search, § 4.10(b), p. 154.) (3) The drugs stolen from the pharmacy could easily have been in the toolbox. The officers knew that the box belonged to appellant and that he resided on the premises.

It is also clear from the record that the officers intended to search the toolbox when they first observed it. The prosecutor, Mr. Welden, asked Officer Curtis:

"Q. *By Mr. Welden*: Detective Curtis, when you discovered the locked tool box in the garage, were you in the process of searching for the items that are listed or were listed on the search warrant?

"A. Yes, I was.

"Q. Was it your intent, then, to search the contents of that box?

"*Mr. Ashe*: I'm going to object.

"*The witness*: *Yes, it was.*

"*Mr. Ashe*: As calling for a conclusion, and it's irrelevant and there's no proper foundation.

"*The Court*: Mr. Welden?

"*Mr. Welden*: My question stands.

"*The Court*: Why is it irrelevant, Mr. Ashe?

"*Mr. Ashe*: What's his intention got to do with it? Furthermore, it calls for a conclusion. [¶] I said, it calls for a conclusion and it's irrelevant.

"*The Court*: Sustained."

We make two observations about this colloquy between court and counsel. First, defense counsel's objection to the prosecutor's question was improper; whether the officers intended to search the toolbox pursuant to the authority of the warrant was critically relevant to the question whether the search was tainted by the illegal police conduct in seizing appellant's keys from his person. If the officers did not intend to search the box until after they seized the keys, the search was the direct product of their illegality, and the drugs found in the box must be suppressed.

Second, although the trial court erroneously sustained the objection, appellant failed to move to strike the answer, "Yes, it was"; hence, the answer stands in the record and constitutes sufficient evidence to support the trial court's implied finding that the officers intended to search the box when they first discovered it.[1]

---

[1]A denial by the superior court of a Penal Code section 1538.5 motion is an implied finding that the testimony of the prosecution witnesses is true (Evid. Code, § 402, subd. (c); *People* v. *Superior Court (Keithley)* (1975) 13 Cal.3d 406, 410 [118 Cal.Rptr. 617, 530 P.2d 585]). Upon review, the evidence supporting alternative inferences is to be construed in the light most favorable to the People (*People* v. *Morton* (1971) 21 Cal.App.3d 172, 176 [98 Cal.Rptr. 261]).

There is other evidence in the record to support the trial court's implied finding that the officers intended to search the box when it was discovered. Defense counsel, Mr. Ashe, cross-examined Officer Curtis at length concerning the officer's interest in the toolbox and whether he searched the box in reliance on the warrant or on the basis of some probable cause apart from the warrant. The officer replied that he was acting pursuant to the warrant. The facts of the search bear this out. When Officer Curtis first observed the toolbox, he returned to the living room and asked Hilton and Morrison whose box it was. They said it belonged to appellant. The fact that the officer left the garage to inquire about the ownership of the toolbox gives rise to a reasonable inference that he intended to search it if it belonged to one of the occupants of the house (presumably, the officer was aware of the rule that personal effects belonging to someone who is merely visiting the premises to be searched are not within the scope of the warrant). (See LaFave, *supra*, § 4.10(b), pp. 155-158.) The fact that Officer Curtis' task of opening the box was made easier by his being told that appellant had the key to the toolbox on his belt, does not nullify the officer's pre-existing intent to search the box.

It would be incongruous indeed to hold that Officer Curtis would be acting within the authority of the warrant if he had broken open the box without using appellant's key but that by using the key he exceeded his authority under the warrant. In the final analysis, the standard for determining what is an illegal search is whether the defendant's "'reasonable expectation of privacy was violated by *unreasonable* governmental intrusion.'" (*People* v. *Triggs* (1973) 8 Cal.3d 884, 891 [106 Cal.Rptr. 408, 506 P.2d 232], italics added.)[2] Any unreasonable invasion of the privacy of appellant's person by the seizure of the keys does not render the invasion of appellant's privacy in the toolbox unreasonable since the latter invasion was pursuant to the authority of the warrant. In other words, for Fourth Amendment purposes, the seizure of the key was irrelevant to the search of the toolbox.

We do not depreciate the wrongfulness of the officer's conduct in not seeking appellant's permission to use his key to open the box. Appellant appeared to the officers to be sleeping, and he easily could have been awakened and asked for his key. ■ What we do hold is that the of-

---

[2]Overruled on another ground in *People* v. *Lilienthal* (1978) 22 Cal.3d 891, 896 [150 Cal.Rptr. 910, 587 P.2d 706].

ficers were not legally required to utilize appellant's key to open the box since they had full authority to search it pursuant to the warrant.

Another theory supports the lawfulness of the police intrusion into the box. This is the so-called "'inevitable discovery'" rule which is a variation upon the "'independent source'" theory, "but it differs in that the question is not whether the police did in fact acquire certain evidence by reliance upon an untainted source but instead whether evidence found because of a Fourth Amendment violation would inevitably have been discovered lawfully." (LaFave, *supra*, § 11.4, pp. 620-621.) In *Wong Sun* v. *United States* (1963) 371 U.S. 471 [9 L.Ed.2d 441, 83 S.Ct. 407], the United States Supreme Court declined to hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light *but for* the illegal actions of the police. As noted by Justice Powell in his concurring opinion in *Brown* v. *Illinois* (1975) 422 U.S. 590, 608-609 [45 L.Ed.2d 416, 430, 95 S.Ct. 2254], the *Wong Sun* rejection of the "'but for'" test "recognizes that in some circumstances strict adherence to the Fourth Amendment exclusionary rule imposes greater cost on the legitimate demands of law enforcement than can be justified by the rule's deterrent purposes." (See LaFave, *supra*, § 11.4(a), p. 615.)

As explained in *People* v. *Superior Court* (*Tunch*) (1978) 80 Cal. App.3d 665, 673 [145 Cal.Rptr. 795]: "'Although typically any evidence obtained, even indirectly, through the illegal actions of police is inadmissible as "fruit of the poisonous tree," where the court finds that the challenged evidence would have been eventually secured through legal means regardless of the improper official conduct, the inevitable discovery exception allows the evidence to be admitted. The doctrine was developed to prevent unjustly granting criminals immunity from prosecution.'" (Quoting from Novikoff, *The Inevitable Discovery Exception to the Constitutional Exclusionary Rules* (1974) 74 Colum. L.Rev. 88; fns. omitted.)

Again, reasonable inferences from the evidence produced before the court below support a finding that the police would inevitably have discovered the contents of the toolbox. If the police had awakened appellant and had asked for his key to open the box and appellant had refused, the officers undoubtedly would have broken into the box. On the other hand, if appellant had allowed the police to use his key to avoid possible damage to his toolbox, it would have been a consensual

search. In either event, the box would have been opened without violating appellant's Fourth Amendment rights. For the reasons stated, we find there was no unreasonable police intrusion into appellant's toolbox.

### THE GRAND JURY INDICTMENT IS NOT INVALID BECAUSE THE PROSECUTOR FAILED TO INFORM THE GRAND JURY THAT THE MAGISTRATE HAD PREVIOUSLY DISMISSED THE COMPLAINT ON THE GROUND THE EVIDENCE WAS ILLEGALLY SEIZED

Appellant contends that under *Johnson* v. *Superior Court* (1975) 15 Cal.3d 248 [124 Cal.Rptr. 32, 539 P.2d 792], the prosecutor in the instant case was obligated to inform the grand jury of the fact that the appellant's suppression motion had been granted by the magistrate and the complaint dismissed at the preliminary examination proceedings. We hold, however, that since the magistrate's suppression of the evidence did not in any way tend to negate appellant's guilt, the *Johnson* principles are inapplicable.

In *Johnson*, the Supreme Court held: "...that when a district attorney seeking an indictment is aware of evidence reasonably tending to negate guilt, he is obligated under section 939.7 to inform the grand jury of its nature and existence, so that the grand jury may exercise its power under the statute to order the evidence produced." (*Id.*, at p. 255.)

The evidence that the prosecutor failed to present to the grand jury in the present case was that the drugs found in appellant's toolbox had been suppressed as an illegal search and seizure under the Fourth Amendment. Such evidence would be inadmissible at trial as it was irrelevant to appellant's guilt or innocence of the crime for which he was indicted. The magistrate's suppression order was not binding on the prosecutor (Pen. Code, § 1538.5, subds. (d) and (j)),[3] nor was it binding on the grand jury since it would not be known whether the drugs found in the toolbox were suppressible until a new determination was made by the superior court pursuant to motions under Penal Code sections 995 and 1538.5.

---

[3]Penal Code section 1538.5, subdivisions (d) and (j) provide that: "(d) If a search or seizure motion is granted pursuant to the proceedings authorized by this section, the property or evidence shall not be admissible against the movant at any trial or other hearing *unless further proceedings authorized by this section* or Section 1238 or Section 1466 are utilized by the people.

" . . . . . . . . . . . . . . . .

"(j) If the property or evidence relates to a felony offense initiated by complaint and the defendant's motion for the return of the property or suppression of the evidence at

We find no merit to appellant's due process argument. The prosecutor's failure to advise the grand jury of the magistrate's dismissal of the charges based on Fourth Amendment violations did not prejudice appellant. It neither compromised the independence of the grand jury nor did it contribute to the decision to indict. (Cf. *People* v. *Backus* (1979) 23 Cal.3d 360, 393 [152 Cal.Rptr. 710, 590 P.2d 837].)

The judgment is affirmed.

Brown (G.A.), P. J., concurred.

**ZENOVICH, J.**—I respectfully concur with and dissent from the majority opinion.

I concur in the belief that the previous suppression of evidence did not have to be revealed to grand jurors based upon considerations of public policy. Under *Johnson,* the district attorney is obligated to inform grand jurors of evidence "reasonably tending to negate guilt." (*Johnson* v. *Superior Court* (1975) 15 Cal.3d 248, 251 [124 Cal.Rptr. 32, 539 P.2d 792].) In *Johnson,* the prosecutor had not informed the grand jury about a defendant's testimony at a preliminary hearing which led a magistrate to dismiss charges against him. (*Id.,* at p. 250.) I read *Johnson* as encompassing more than just evidence which is directly exculpatory in nature. *Johnson* was partially based on an antecedent case, *People* v. *Ruthford* (1975) 14 Cal.3d 399 [121 Cal. Rptr. 261, 534 P.2d 1341], which dealt with prosecutorial suppression of material evidence at trial. *Ruthford* held that there was a duty on the part of the prosecution "to disclose all substantial material evidence *favorable to an accused,* whether such evidence relates directly to the question of guilt, to matters relevant to punishment, or to the credibility of a material witness." (*Ruthford, supra,* at p. 406.) Commentary has also suggested that credibility factors relating to a key prosecution witness would fall within the ambit of the *Johnson* rule. (See Note, *Criminal Procedure: District Attorney's Duty to Inform Grand Jury of Exculpatory Evidence* (1977) 65 Cal.L.Rev. 382, 390-391.) Thus, some types of evidence may be exculpatory even though they do not *directly* negate a defendant's guilt.

---

the preliminary hearing is granted, *and if the defendant is not held to answer* at the preliminary hearing, *the people may file a new complaint or seek an indictment after the preliminary hearing, and the ruling at the prior hearing shall not be binding in any subsequent proceeding. . . .*" (Italics added.)

Nonetheless, the fact that some evidence has been previously suppressed should not be divulged to grand jurors. Direct testimony of an accused which convinces a magistrate to dismiss the complaint and factors relating to the credibility of prosecution witnesses are exculpatory because grand jurors possess the ability to weigh such evidence for purposes of explaining away the charges against the accused. In essence, "the grand jury's determination is intended to be in the nature of a prediction of what the trial jury will do." (Note, *Criminal Procedure: District Attorney's Duty to Inform Grand Jury of Exculpatory Evidence, supra*, 65 Cal.L.Rev. at p. 391.) Grand jurors do not, however, have the legal expertise to determine whether or not a suppression of evidence was correctly decided. Submission of the results of a suppression motion would allow the grand jury to speculate about the propriety of a search and/or seizure—matters beyond its role as a predictor of what jurors will do. Instead, it is preferable to let judges decide whether evidence is admissible under the exclusionary rule, since they are trained to make this type of *legal conclusion.*

Rather than having grand jurors decide these issues, the validity of the search or seizure can be relitigated de novo in a superior court hearing. (See Pen. Code, § 1538.5, subds. (i), (j).) This insures that a judicial mind can again competently consider the legality of the police intrusion. Because the grand jury does not possess the expertise to weigh this type of evidence, I agree with the result of the majority on this issue.

Although agreeing with the resolution of the *Johnson* contention, I feel that the officers here illegally searched appellant's toolbox. The majority suggests that the procurement of the key from appellant did not vitiate the search because the officers intended to search the toolbox and because the police would have inevitably discovered the toolbox contents. Even though set forth as two separate theories, both hinge upon showing that the policemen wanted to secure the items in the toolbox *in the event no key had been found.* It is conjectural to think that the officers would have "sledge-hammered" the heavily padlocked box in light of previous discoveries of stolen items listed in the search warrant. In my opinion, procurement of the keys without consent was an unlawful search of appellant's person and cannot be condoned unless the record clearly shows that inevitable discovery would have taken place.

Based on reasonable inferences from two passages in the record, the majority argues that the officers intended to search the toolbox. I believe that the majority's reliance is misplaced when this evidence is examined. The majority initially cites to a colloquy between court and counsel, in which Detective Curtis said it was his intent to search the toolbox. The record plainly reveals, however, that the court sustained defense counsel's objection to this question, rendering this an improper part of the appellate record. Although defense counsel did not ask for a motion to strike, he made a timely objection and should not be punished for the court's failure to then formally order the testimony stricken. (See Evid. Code, § 353.)[1] Besides this testimony, the majority suggests that the officer's inquiry into ownership of the toolbox gives rise to an inference that he intended to search it. This inference does not necessarily follow from the police inquiry, since there is no indication that a break-in would have been initiated *absent procurement of the key.* (See Evid. Code, § 600, subd. (b).) Moreover, there is no evidential support for the proposition that officers believed the contraband from the burglarized pharmacy would be found in the toolbox. Thus, there is insufficient evidence in the record to justify the search under the inevitable discovery rule.

It is my conviction that the taking of the keys from appellant's person makes the subsequent seizure tainted under the Fourth Amendment of the United States Constitution. I would therefore reverse the conviction, since it was based on evidence obtained from an illegal search and seizure.

---

[1]The fact that this was a neglect by the trial court and should be disregarded at the appellate level is borne out by the remainder of the colloquy. Immediately after the passage quoted in the majority opinion, the following exchange occurred:

"Q. *By Mr. Welden*: Did you intend to search that box?

"*Mr. Ashe*: Same objection.

"*The court*: Sustained.

"*Mr. Welden*: No further questions." This shows that the defense properly preserved an objection to the testimony, thereby rendering it inconsequential for purposes of determining the officer's intent. The failure to request a motion to strike does not retain evidence on the record where there was an exclusion through a proper objection.

In addition, the majority concludes that the relevancy objection was improper and the officer's testimony *should* have been allowed. Since appellant does not challenge the propriety of the trial judge's ruling on appeal, this conclusion of the majority is merely gratuitous.