**ELLWEST STEREO THEATRES, INC., a corporation, Plaintiff-Appellant,**

v.

**Paul WENNER, Individually and as the treasurer of the City of Phoenix, Lawrence Wetzel, individually and as the chief of police of the City of Phoenix, Defendants-Appellees.**

No. 80–5732.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 8, 1982.

Decided July 23, 1982.

Richard J. Hertzberg, Phoenix, Ariz., for plaintiff-appellant.

Sandra K. McGee, Phoenix, Ariz., for defendants-appellees.

Before CHAMBERS, KENNEDY and SCHROEDER, Circuit Judges.

SCHROEDER, Circuit Judge.

Appellant Ellwest Stereo Theatres ("Ellwest") operates a Phoenix, Arizona movie arcade in which members of the public pay to view sexually explicit films in booths. Ellwest brought suit challenging the constitutionality of a City of Phoenix ordinance requiring that the viewing areas of booths in which coin operated viewing devices are located be visible from a continuous main aisle. On the basis of stipulated facts, the district court held that the ordinance was a reasonable regulation of the operation of theaters not based upon the content of the films shown, and entered judgment in favor of the City. We affirm.

Chapter VII of the Phoenix City Code requires, *inter alia*, that anyone engaged in running a "video center" obtain a license from the city. Section 7–3(a)(a) defines a "video center" as "[a]ny establishment open to the public wherein are operated any film or videotape viewing device [sic]." Section 7–30(a)(6) provides as follows:

(6) Position of film or video viewing device in video center.

(a) Definition for purposes of this section.

(1) Viewing area—area where patron or customer would ordinarily be positioned while watching a film or video viewing device.

(b) All viewing areas must be visible from a continuous main aisle and must not be obscured by any curtain, door, wall, or other enclosure.

(c) All persons regulated pursuant to this Chapter must comply with Section 7–30(a)(6) within 30 days of the effective date of the ordinance.

Ellwest is a "video center" within the meaning of the ordinance and thus is required to obtain a license. Ellwest applied for a license without complying with § 7–30(a)(6) as set forth above. The application was denied on the ground that the viewing areas of the booths were not visible from a continuous main aisle.

The City alleges that the ordinance was passed as a response to complaints that the display of adult films in the arcades was causing sex-related criminal activity. The parties stipulated that "[s]ome customers in the booths viewing the films will, on occasion, take the opportunity to fondle themselves or masturbate." The parties further stipulated that in the two years preceding this lawsuit, "[t]here were 783 sex-related arrests in the eleven business establishments located in the City of Phoenix which have video viewing devices such as Plaintiff's displaying 'adult' films. Sex-related offenses include public sex indecency, public sexual activity, indecent exposure, and lewd and lascivious conduct." [1]

The sole issue presented, as framed by Ellwest in its appellate brief, is whether the ordinance "requiring open booths in motion picture arcades is unconstitutional on its face as violative of the Free Speech and Privacy provisions of the United States Constitution."

First, Ellwest argues that its own exercise of first amendment rights is limited by the ordinance. Second, Ellwest asserts infringement of the constitutional rights of its customers under the first and fourteenth amendments. Each of these contentions will be analyzed in turn.

## CLAIMED INFRINGEMENT OF ELLWEST'S CONSTITUTIONAL RIGHTS

█ We begin with the proposition that Ellwest has a constitutional right to exhibit its films. It is settled that obscene materials are not protected speech within the meaning of the first amendment, as applied to the states through the fourteenth amendment. *Ginsberg v. New York*, 390 U.S. 629, 635, 88 S.Ct. 1274, 1278, 20 L.Ed.2d 195 (1968); *Smith v. California*, 361 U.S. 147, 152, 80 S.Ct. 215, 218, 4 L.Ed.2d 205 (1959); *Roth v. United States*, 354 U.S. 476, 485, 77 S.Ct. 1304, 1309, 1 L.Ed.2d 1498 (1957). The City does not contend, however, that the films are obscene, or that their content is undeserving of first amendment protection for any other reason. *See New York v. Ferber*, —— U.S. ——, ——, 102 S.Ct. 3348, 3358, 73 L.Ed.2d 1113 (1982). Thus, we must assume their dissemination by Ellwest is protected by the first amendment. *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 501–02, 72 S.Ct. 777, 780, 96 L.Ed. 1098 (1952).

Ellwest does not nor could it successfully contend that the Phoenix ordinance regulates speech on the basis of content.[2] The ordinance does not prohibit the showing of any film whatever. Ellwest may still exhibit any film it wishes, and its discretion in selecting those films is unbridled by the ordinance. "There is no claim that distributors or exhibitors of adult films are denied access to the market or, conversely, that the viewing public is unable to satisfy its appetite for sexually explicit fare." *Young v. American Mini Theatres, Inc.*, 427 U.S. 50,

---

1. Ellwest does not challenge the state's power to criminalize public sexual activity. The stipulated facts amply support the City's contention that such activity occurs with great frequency in arcades where movies are exhibited in enclosed booths.

2. The ordinance by its terms applies to all enclosed video viewing booths regardless of the type of film shown. Its reach is not limited to booths in which "adult" films are displayed. Nor does Ellwest make a claim of discriminatory enforcement.

62, 96 S.Ct. 2440, 2448, 49 L.Ed.2d 310 (1976). This is not an ordinance which prohibits the showing of any constitutionally protected film. We thus are not faced with the considerations which recently led us to hold that a prohibition on all topless entertainment was unconstitutional on its face as overbroad. *Chase v. Davelaar*, 645 F.2d 735 (9th Cir. 1981). *See also Erznoznik v. City of Jacksonville*, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975).

■ The ordinance does regulate the manner in which films chosen by Ellwest may be shown. Regulations of the time, place, or manner of protected speech will be upheld if necessary to further significant governmental interests. Requiring such a showing insures that expression protected by the first amendment will not be unduly inhibited by regulation of its form.

Reasonable regulations of the time, place, and manner of protected speech, where those regulations are necessary to further significant governmental interests, are permitted by the First Amendment. *See, e.g., Kovacs v. Cooper*, 336 U.S. 77 [69 S.Ct. 448, 93 L.Ed. 513] (limitation on use of sound trucks); *Cox v. Louisiana*, 379 U.S. 559 [85 S.Ct. 476, 13 L.Ed.2d 487] (ban on demonstrations in or near a courthouse with the intent to obstruct justice); *Grayned v. City of Rockford*, 408 U.S. 104 [92 S.Ct. 2294, 33 L.Ed.2d 222] (ban on willful making, on grounds adjacent to a school, of any noise which disturbs the good order of the school session).

*Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 63 n.18, 96 S.Ct. 2440, 2448 n.18, 49 L.Ed.2d 310 (1976).

■ Ellwest contends that the ordinance is not justified as a reasonable regulation of the time, place, and manner of protected speech. It needs no extended discussion, however, to uphold the open booth requirement against this line of attack. The ordinance, as the parties have stipulated, is aimed at curtailing public sexual criminal offenses and as such it clearly seeks to further significant state interests.[3] In this respect we agree with the conclusion of the California court of appeal upholding the ordinance upon which the Phoenix City Council patterned its own enactment. That court explained the problem giving rise to the prohibition of enclosed booths and concluded that the ordinance furthered significant interests of the city.

"A picture arcade is a business, carried on in a place which the public generally is invited to enter and use. Since it is a place of entertainment, its patrons are not expected to enter with the solemnity of a business visitor at a mercantile establishment. Ordinarily those entering a picture arcade are seeking amusement, relaxation or excitement, possibly sexual stimulation or gratification depending on the taste or mood of the individual and the kind of pictures exhibited. Among such visitors it is foreseeable that some will be predisposed to conduct which is offensive, dangerous to others and even unlawful. The potential for misuse of the premises, for law violations, and for bodily harm to law-abiding patrons, is obvious, as is the concomitant need for [deterring such conduct]."

The City has a substantial interest in preventing the kind of dangerous or unlawful conduct, as well as the health and safety problems, which may be anticipated in a picture arcade where the booths are concealed or enclosed. The prohibition of such booths furthers the City's interest in deterring and detecting the use of the premises for such unlawful activity.

*EWAP, Inc. v. City of Los Angeles*, 97 Cal.App.3d 179, 189–90, 158 Cal.Rptr. 579,

---

**3.** In *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), the Court observed that a zoning regulation requiring geographic dispersion of licensed theaters

does not, in itself, create an impermissible restraint on protected communication. The city's interest in planning and regulating the use of property for commercial purposes is clearly adequate to support that kind of restriction applicable to all theaters within the city limits. In short, . . . the regulation of the place where such films may be exhibited does not offend the First Amendment.

Id. at 62–3, 96 S.Ct. at 2448 (footnote omitted).

585 (1979), *quoting People v. Perrine*, 47 Cal.App.3d 252, 258, 120 Cal.Rptr. 640, 643–44 (1975). *See also DeMott v. Board of Police Comm'rs*, 122 Cal.App.3d 296, 175 Cal.Rptr. 879 (1981).

We similarly hold that the ordinance does not impermissibly infringe upon Ellwest's first amendment rights.

### CLAIMED INFRINGEMENT OF CUSTOMERS' CONSTITUTIONAL RIGHTS

Ellwest argues alternatively that the ordinance impermissibly impinges upon the first amendment and privacy rights of the patrons of its establishment.

We observe initially that the Supreme Court has never held that an owner of a theater has standing to assert the constitutional rights of its customers. In *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 65, 93 S.Ct. 2628, 2639, 37 L.Ed.2d 446 (1973), the Court assumed for purposes of argument that the owner had such vicarious standing, and we do the same here.

■ The considerations discussed with respect to the owner's right to exhibit the films apply with equal force to the alleged interference with the first amendment rights of patrons to view the films. The ordinance is a reasonable regulation of the manner in which films may be viewed as well as shown. *See Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 79–80, 96 S.Ct. 2440, 2456–57, 49 L.Ed.2d 310 (1976) (Powell, J., concurring); *United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968); *EWAP, Inc. v. City of Los Angeles*, 97 Cal.App.3d 179, 189–90, 158 Cal.Rptr. 579, 585–86 (1979).

Ellwest also contends that the open booth requirement has a chilling effect on the exercise by potential customers of the constitutionally protected right to view the exhibited films. Citing *NAACP v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), Ellwest urges that a law that exposes to public view the identities of persons engaged in unpopular but nevertheless protected activity impermissibly chills the right by subjecting those who would exercise it to the possibility of vilification or recrimination.

We are not authorized, however, to determine the validity or invalidity of a statute or ordinance in the abstract. There is nothing in the record that supports the suggestion that, because of the open booth requirement, potential viewers forego their right to watch films of their choice. By Ellwest's own admission, its customers must enter the establishment from a busy public street. We presume that those who enter are just as easily identified at the time they enter as they would be while in an open booth watching a movie. There is no basis to conclude that potential viewers are more intimidated by the prospect of being identified once inside than they are by that of being seen upon entering the arcade in the first place. If that is Ellwest's contention, the record should so demonstrate. Some factual support is required before a federal court will pass upon the constitutionality of a law that allegedly chills the exercise of first amendment rights. *See Laird v. Tatum*, 408 U.S. 1, 12–16, 92 S.Ct. 2318, 2325–27, 33 L.Ed.2d 154 (1972).

Ellwest's major concern is not with its patrons' first amendment rights to view the films, but rather with an alleged infringement of their right to privacy. The essence of the argument is that the customers have a constitutional right to fondle themselves; therefore, argues Ellwest, the City may not constitutionally require that the theater open the booths and thus chill the patrons' exercise of the right to masturbate.

We assume with a fair degree of confidence that the activities Ellwest seeks to protect may be enjoyed without governmental interference in the sanctity of the customers' homes. Ellwest must establish, however, that there is a constitutional right to engage in such activities in a public place. That issue has been decided against Ellwest in *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 65–67, 93 S.Ct. 2628, 2639–40, 37 L.Ed.2d 446 (1973). The Court there held that the constitutionally protected right to watch obscene movies in the privacy of one's own home did not import a similar right to watch the same movies in a public place. The court reasoned that while

viewing obscene movies in one's home, *Stanley v. Georgia,* 394 U.S. 557, 568, 89 S.Ct. 1243, 1249, 22 L.Ed.2d 542 (1969), and engaging in sexual intercourse in the marital bedroom, *Griswold v. Connecticut,* 381 U.S. 479, 485–86, 85 S.Ct. 1678, 1682, 14 L.Ed.2d 510 (1965), are both protected by the constitutional right to privacy, that protection ceases when the locus of the conduct shifts to a place of public accommodation such as a theater. The Court "declined to equate the privacy of the home relied on in *Stanley* with a 'zone' of 'privacy' that follows a distributor or a consumer . . . wherever he goes. The idea of a 'privacy' right and a place of public accommodation are, in this context, mutually exclusive." *Paris Adult Theatre, supra,* 413 U.S. at 66, 93 S.Ct. at 2639 (citations omitted). In defining the limits of the constitutional right to privacy, the Court invoked Justice Cardozo: "[o]ur prior decisions recognizing a right to privacy guaranteed by the Fourteenth Amendment included 'only personal rights that can be deemed "fundamental" or "implicit in the concept of ordered liberty." ' " *Id.* at 65, 93 S.Ct. at 2639, *quoting, inter alia, Palko v. Connecticut,* 302 U.S. 319, 325, 58 S.Ct. 149, 151, 82 L.Ed. 288 (1937).

■ While we certainly agree with Ellwest that its customers have a constitutional right to view its films, we cannot agree that the interest in simultaneously engaging in sexual activity is similarly protected. We decline to hold that the "right" to unobserved masturbation in a public theater is "fundamental" or "implicit in the concept of ordered liberty."

■ Ellwest also cites a number of cases which deal not with the right to privacy but with the fourth amendment right to be free from unreasonable searches and seizures. *See, e.g., Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Ellwest seems to equate the ordinance requiring open video booths with police use of peep holes in public toilets. *See, e.g., People v. Triggs,* 8 Cal.3d 884, 106 Cal.Rptr. 408, 506 P.2d 232 (1973); *Bielicki v. Superi-*

*or Court,* 57 Cal.2d 602, 21 Cal.Rptr. 552, 371 P.2d 288 (1962); 1 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 2.4(c) (1978). The record here does not indicate, however, either the nature or extent of police surveillance of open booths in arcades that have complied with the ordinance. Moreover, any threat of "dragnet searches" or "spying" is not a threat to Ellwest's fourth amendment interests, but to the interests of its patrons. "Fourth amendment rights are personal rights . . . which may not be vicariously asserted." *Rakas v. Illinois,* 439 U.S. 128, 133–34, 99 S.Ct. 421, 424–25, 58 L.Ed.2d 387 (1978), *quoting Alderman v. United States,* 394 U.S. 165, 174, 89 S.Ct. 961, 966, 22 L.Ed.2d 176 (1969). *See also United States v. Payner,* 447 U.S. 727, 731–37, 100 S.Ct. 2439, 2443–47, 65 L.Ed.2d 468 (1980). Thus Ellwest has no standing to assert the fourth amendment rights of its customers. Such a claim is premature in any event, in the absence of a showing that such searches have indeed been conducted.[4]

Accordingly, we hold that the open booth ordinance is not facially unconstitutional. The judgment of the district court is affirmed.

---

4. On the prematurity point, see the discussion in *California Bankers Ass'n v. Shultz,* 416 U.S. 21, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974) (passim). *Cf. Laird v. Tatum,* 408 U.S. 1, 11, 92 S.Ct. 2318, 2324, 33 L.Ed.2d 154 (1972) (mere fear of future detrimental action by government insufficient to state justiciable claim under first amendment).