699 F.Supp. 1393 (1988)
POSTSCRIPT ENTERPRISES, Plaintiff,
v.
CITY OF BRIDGETON, Defendant.
No. 87-1147 C (5).
United States District Court, E.D. Missouri, E.D.
November 8, 1988.
*1394 Murry A. Marks, Saint Louis, Mo., for plaintiff.
William A. Richter, Robert Schultz, Peper, Martin, Jensen, Maichel & Hetlage, St. Louis, Mo., for Bridgeton.

MEMORANDUM AND ORDER
LIMBAUGH, District Judge.
This cause is before the Court on defendant's motion for summary judgment. On February 4, 1987, the City Council for the City of Bridgeton enacted ordinance number 87-14, which regulates movie arcades with viewing areas that are designed for occupancy by fewer than six persons. Plaintiff Postscript Enterprises, Inc., an operator of a movie arcade in the City of Bridgeton, challenges as unconstitutional two provisions of the ordinance: first, section (C)(2), which requires all viewing areas to be visible from a continuous main aisle; and second, section (B), which requires a business to obtain a permit to operate a movie arcade.
Under Fed.R.Civ.P. 56, a movant is entitled to summary judgment if he can show "that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). The burden of proof is on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op, 838 F.2d 268, 273-74 (8th Cir.1988). Once the moving party discharges its burden, the non-moving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Industrial Co. v. Zenith Radio, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Indeed, it then bears the burden of setting forth specific facts to show that "there is sufficient evidence favoring [it] for a jury to return a verdict for [it]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). If the non-moving party fails to meet that burden, summary judgment should be granted. City of Mt. Pleasant, 838 F.2d at 274.
Defendant initially raises the issue of plaintiff's standing to challenge the constitutionality *1395 of the ordinance. The Supreme Court recently addressed this issue in City of Lakewood v. Plain Dealer Publishing Co., ___ U.S. ___, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988). In that case, the Court reiterated the well-established principal of allowing facial challenges of certain ordinances that regulate first amendment activity.
Recognizing the explicit protection accorded speech and the press in the text of the First Amendment, our cases have long held that when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license.
City of Lakewood, 108 S.Ct. at 2143 (citations omitted).
Defendant argues that two of the factors listed by the Lakewood court as justifying review of the ordinance are not applicable here. First, the Bridgeton ordinance has no relicensing requirement, and second, the licensing decision is determined by the City Council rather than an administrative official. It must be recognized, however, that these were not the only two factors leading to the Supreme Court's decision that plaintiff had standing to bring the suit. In Shuttlesworth v. City of Birmingham, 394 U.S. 147, 151, 89 S.Ct. 935, 939, 22 L.Ed.2d 162 (1969), the Court stated, "The Constitution can hardly be thought to deny to one subjected to the restraints of such an ordinance the right to attack its constitutionality." This philosophy has not been abandoned by the Court, as defendant may suggest. Rather, Shuttlesworth was cited by the Court in Lakewood, 108 S.Ct. at 2143, upholding plaintiff's standing to challenge the city's licensing requirement. Similarly, the Court finds that plaintiff Postscript Enterprises, although it has not applied for a permit from the City of Bridgeton as required by Ordinance 87-14, has standing to challenge the constitutionality of the ordinance.
The Bridgeton ordinance does not limit its applicability to theaters where obscene movies are shown, nor does the city contend that the films plaintiff shows are obscene. Therefore, plaintiff is entitled to the protection afforded by the First Amendment. Schad v. Borough of Mount Ephraim, 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981).
The first provision of the ordinance plaintiff challenges concerns the requirement that viewing areas "be visible from a continuous main aisle and must not be obscured by any curtain, door, wall or other enclosure." Several courts have considered the constitutionality of ordinances containing a similar requirement. In Ellwest Stereo Theatres, Inc. v. Wenner, 681 F.2d 1243, 1245 (9th Cir.1982), plaintiff challenged a City of Phoenix ordinance similar to the one at issue here. In examining an individual's right to privacy, the court acknowledged that a person has the constitutionally protected right to watch obscene movies in the privacy of one's own home, but not the right to watch the same movies in a public place. Id. at 1247 (citing Paris Adult Theatre I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973)). Similarly, the court ruled, an individual's right to privacy does not extend to viewing films or engaging in sexual activity in a closed booth of a public theater. Ellwest, 681 F.2d at 1248.
Since Ellwest, other courts have reached the same result, although sometimes analyzing the issue differently. In Wall Distributors, Inc. v. City of Newport News, 782 F.2d 1165 (4th Cir.1986), the court determined that the regulation must be analyzed under a manner restriction test, "for the ordinance does not regulate speech on the basis of content, but instead, restricts primarily noncommunicative aspects of [plaintiff's] right to disseminate the content of the films and thereby imposes only an incidental burden on that right." Id. at 1168. Using the test set forth in United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), the court concluded that the city had "a reasonable basis for determining that closed booth showings were sufficiently likely to foster a pattern of conduct inimical to public health, decency *1396 and order that in those interests they should be foreclosed." Wall, 782 F.2d at 1169. See also FW/PBS, Inc. v. City of Dallas, 837 F.2d 1298 (5th Cir.1988) (court used manner test in upholding restriction); Berg v. Health & Hosp. Corp., 667 F.Supp. 639, 644 (S.D.Ind.1987) ("The prohibition of doors is at most a minimal intrusion on plaintiffs' offering and their patrons' viewing of entertainment.").
Section (C)(2) of the City of Bridgeton ordinance does nothing more than restrict the manner in which plaintiff may show its films. The restriction applies only to the physical structure of the rooms in which the films are shown. The ordinance does not regulate the content of the films, nor does it infringe on the rights of customers who wish to view the films. The Court, in accordance with the majority rule, finds that section (C)(2) of the ordinance does not violate plaintiff's First Amendment rights.
Plaintiff also challenges section (B) of the ordinance requiring a person have a permit to operate a movie arcade. The procedure for obtaining a permit is set forth in section (B)(2) of the ordinance.[1] Generally, municipalities have broad authority in the exercise of their police powers to restrict the issuance of licenses and permits where the restriction has a reasonable relationship to the protection of the public health, safety, welfare or morals in view of the nature of the occupation or activity that is licensed. 9 E. McQuillin, The Law of Municipal Corporations § 26.46 at 122-23 (C. Keating rev. 3d ed. 1986). But if the license involves the exercise of first amendment rights, any regulatory scheme under which the license may be denied or revoked because of past criminal convictions constitutes a system of prior restraint and will be subject to strict scrutiny. Id.; Natco Theatres, Inc. v. Ratner, 463 F.Supp. 1124 (S.D.N.Y.1979). "Licensing provisions are prior restraints on speech if they permit authorities to deny the use of a forum for protected expression in advance of actual expression." Wall Distributors, Inc. v. City of Newport News, 782 F.2d 1165, 1171 (4th Cir.1986).
In Natco Theatres, supra, and Dumas v. City of Dallas, 648 F.Supp. 1061 *1397 (N.D.Tex.1986), city ordinances required that licenses would be denied if the applicant had prior criminal convictions. Both courts recognized, however, that the ordinances could provide for denial of licenses upon the past convictions of certain crimes. See Natco Theatres, 463 F.Supp. at 1124 ("[T]his standard could be met were the City to draft a narrow ordinance under which certain non-speech related crimes (for example arson or criminal negligence) would serve as the basis for denying a license.") and Dumas, 648 F.Supp. at 1073 ("[D]enial of licensure to those convicted of certain specified crimes that are related to the crime-control intent of the law is undoubtedly permitted.").
In the instant case, however, the Bridgeton ordinance does not provide that a criminal conviction is a basis for denial of the permit. Instead, that is simply one of the informational items the applicant is required to provide. It is then up to the city council to make a determination, based on all of the information provided, whether to issue a permit. Because there are no provisions in the ordinance that could result in advance denial of the permit, there is no prior restraint.
Plaintiff contends next that subsections (a), (b), (c), (d), (e), (f), (g) and (h) of (B)(2) are discriminatory in that they are directed to individuals and that a corporation, such as plaintiff, cannot comply with those sections. Although a corporation cannot provide fingerprints or a current photograph, those persons who have a financial interest in the business can provide that information. The city apparently anticipated this possibility by requiring managing employees, local agents and financially interested persons to provide the information requested in (B)(2). This argument is without merit.
Finally, plaintiff contends that the ordinance contains no standards for deciding whether to grant or deny a license. Plaintiff cites Shuttlesworth v. City of Birmingham, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969) for the proposition that the Bridgeton ordinance is unconstitutional in that it gives too much discretion to the city council. Plaintiff, however, misconstrues the law as set forth in Shuttlesworth. In discussing the Birmingham ordinance, the court stated:
This ordinance as it was written, therefore, fell squarely within the ambit of the many decisions of this Court over the last 30 years, holding that a law subjecting the exercise of First Amendment freedoms to prior restraint of a license, without narrow, objective and definite standards to guide the licensing authority, is unconstitutional.
Shuttlesworth, 394 U.S. at 150-51, 89 S.Ct. at 938.
The Supreme Court's holding is premised on the finding of prior restraint. As previously discussed, because the Bridgeton ordinance does not mandate denial or revocation of a permit for past criminal convictions, there is no prior restraint. Therefore, the city council is given some discretion in determining whether a permit to operate a movie arcade shall be granted.
In addition, section (D) of the ordinance requires that a permit holder be given a hearing before the city council may revoke a permit. The Court believes that this section also implies that an applicant will be given a hearing prior to a decision by the council to deny a permit request. Plaintiff's contention that the ordinance is unconstitutional because it provides no standards is without merit. The Court finds that Ordinance No. 87-14 does not infringe upon plaintiff's first amendment rights.
Accordingly,
IT IS HEREBY ORDERED that defendant City of Bridgeton's motion for summary judgment is SUSTAINED. Judgment is entered in favor of defendant and against plaintiff on the merits of plaintiff's complaint.
NOTES
[1] (B) Permit

(1) It shall be unlawful for any person to operate, or cause to be operated, a movie arcade in the city unless such person has an unrevoked permit issued pursuant to this section.
(2) Any person desiring to obtain a permit for the operation of a movie arcade in the city shall make written application therefore to the city council, who shall approve or disapprove such application. Such application shall contain the following information about the applicant, any person financially interested in the business to be licensed, any authorized local agents, and any managing employee of the business to be licensed;
(a) Full legal name and any name by which the person is or has been known;
(b) Date and place of birth;
(c) Driver's license if available;
(d) Fingerprints;
(e) A current photograph;
(f) Any prior felony or misdemeanor conviction except minor traffic violations;
(g) Home and business address and telephone number;
(h) Any revocation or suspension of a license issued pursuant to this chapter;
(i) The names of any local authorized agent who will be managing or operating the amusement at the indicated location and proof of their authority to act on behalf of the corporation;
(j) When an agent or other authorized representative is making application on behalf of any prospective licensee, the name, address and telephone number of a local agent authorized to conduct daily business shall be required in addition to authority to act on behalf of the prospective licensee;
(k) An applicant from out of state shall be required to provide the name of a statutory agent;
(l) Except for corporations listed on the major stock exchanges, the names and addresses of all persons financially interested in the business;
(m) Such information requested by the chief of police to determine the truth of the information required to be set forth in the application as set forth above;
(n) Any change in the information required to be provided above concerning the local authorized agent or the applicant shall be reported to the chief of police within ten (10) days of the change. All other information must be updated at the time of the renewal of the license;
(o) All persons regulated pursuant to this chapter must comply with this section within thirty (30) days of the effective date of this section.