Stanley BERG and Berg Investments, Inc., an Indiana Corporation d/b/a The Body Works, PFW, Inc., an Indiana Corporation, Plaintiffs–Appellants,

v.

The HEALTH AND HOSPITAL CORPORATION OF MARION COUNTY, INDIANA, Defendant–Appellee.

No. 87–2493.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 24, 1988.

Decided Jan. 20, 1989.

Richard Kammen, McClure McClure & Kammen, Indianapolis, Ind., for plaintiffs-appellants.

Richard M. Knoth, Squire Sanders & Dempsey, Cleveland, Ohio, for defendant-appellee.

Before BAUER, Chief Judge, KANNE and MANION, Circuit Judges.

MANION, Circuit Judge.

Plaintiffs [1] filed suit seeking a judgment declaring unconstitutional the "open booth" ordinance enacted by The Health and Hospital Corporation of Marion County, Indiana (HHC). On cross-motions for summary judgment, the district court upheld the ordinance. *Berg v. Health and Hospital Corporation of Marion County,* 667 F.Supp. 639 (S.D.Ind.1987). We affirm.

### I.

HHC is an independent governmental body created pursuant to Ind.Code § 16–12–21–1 *et seq.* It is governed by a board of trustees and is responsible for protecting, promoting, and improving public health. The Board of Trustees (Board) is empowered to enact ordinances to promote public health in Marion County, Indiana. To combat the spread of acquired immune deficiency syndrome (AIDS) in Marion County, HHC's Board of Trustees adopted General Ordinance No. 5–1985(A) (open booth ordinance) in February 1986. The ordinance is designed to eliminate structures which promote anonymous sexual activity and hence to curtail such activity, in the hope that this will help prevent or slow the spread of AIDS.

At a public hearing regarding the ordinance, HHC heard testimony from several persons who viewed the ordinance as a positive step toward containing the spread of AIDS.[2] At the hearing, a professor of microbiology and immunology at the Indiana University School of Medicine, the State Health Commissioner for the Indiana State Board of Health, and the acting chief of HHC's Bureau of Disease Prevention/Health Promotion all testified in favor of the ordinance. Among other things, they testified concerning the fatal nature of AIDS, the rapid increase in the number of persons afflicted with the disease both nationwide and in Marion County, and the great risk of persons becoming infected with the disease by engaging in high-risk sexual activity [3] with multiple partners.

Indiana's State Health Commissioner, Dr. Woodrow A. Myers, Jr., also testified before the Board and explained that the State Board of Health's statewide AIDS prevention plan had recommended to each local health officer that, among other things, they identify those businesses or establishments operated wholly or in part to provide opportunities for high-risk sexual behavior and to eliminate the dangers these establishments presented to their communities. Dr. Myers further testified that because high-risk sexual activity was thought to be the primary factor in the transmission of AIDS, those establishments where such high-risk sexual activity occurred were places where the likelihood of the disease's transmission was at its highest.

---

**1.** For the sake of clarity and simplicity we will refer to all plaintiffs and plaintiffs-appellants as "Berg."

**2.** The substance of the testimony, given at a hearing before HHC concerning the adoption of the ordinance, was before the district court in the form of affidavits (in opposition to Berg's motion for summary judgment) by persons who recounted the testimony they had given. Additional background information came from the "legislative finding" by HHC (Appendix A) regarding the ordinance.

**3.** High-risk sexual activity is defined in § 7–402(b) of the ordinance as fellatio and anal intercourse.

HHC also heard testimony from an officer of the Indianapolis Police Department, Lieutenant Rogers. Rogers was assigned to the police department's sex offenses branch and, before that, to the vice branch. Rogers informed the Board that high-risk sexual activity regularly occurred in certain Marion County establishments. In some places, booths are available where patrons may watch entertainment behind closed doors. Typically, the booths have apertures which allow participants on either side of the wall to engage in sexual activity with one another. According to Rogers, hundreds of arrests have been made in such places over the last few years, usually for public indecency. Undercover police officers have reported observing sexual activity occurring in these areas. Rogers concluded that the booths facilitated anonymous sexual activity.

This appeal involves those parts of the ordinance designed to curtail anonymous high-risk sexual activities and, thus, the spread of AIDS, by regulating the design and structure of commercial premises. Section 19–309, for example, provides that no commercial building shall be designed for or used to promote high-risk sexual conduct. Section 19–311 establishes minimum standards for the design and maintenance of commercial buildings. Section 19–311(a) prohibits partitions in buildings which have apertures designed to encourage sexual activity between persons on either side of the partition. Section 19–311(b) provides that "booths, stalls, or partitioned portions of a room, or individual rooms, used for the viewing of motion pictures or other forms of entertainment" are required to have "at least one side open to an adjacent public room so that the area inside is visible to persons in the adjacent public room." Section 19–311(c) provides that no commercial buildings or structures shall be constructed so that private rooms or accommodations can be offered to customers if the building is in violation of § 19–309 and is not a validly operating hotel, motel, apartment complex or condominium. Section 19–310 provides that "the health officer shall be guided" by regulations adopted by HHC's Board and "by the most recent instructions, opinions and guidelines of the Center for Disease Control of the United States Department of Health and Human Services which relate to the spread of infectious diseases...." (The ordinance's relevant provisions are set forth in Appendix A.)

The Board subsequently adopted several health officer regulations to help administer and enforce § 19–311(b). These regulations limit the applicability of the "open booth" provisions to enclosures offered to the public for a fee "as part of a business operated on the premises which offers as part of its business the entertainment to be viewed within the enclosure...." Section 19–311(b)(1). The regulations also excluded private offices used by the owners and employees of the business. The regulations further define the terms "doors, curtains or portal partitions" and the term "open to an adjacent public room" as those terms are used in § 19–311(b). (These regulations are set forth in Appendix B.)

In March 1986, HHC cited PFW, Inc. (PFW) for violating § 19–311(a) and (b). PFW, joined by Stanley Berg and Stanley Berg Investments, Inc., which describes itself as a business offering its customers "private relaxation and entertainment" rooms, filed suit seeking a declaratory judgment and an injunction against the enforcement of the ordinance. The district court permitted Draix, Inc., Annex Adult Books, Inc., Shadeland Avenue Adult Bookstore, and Keystone Avenue Adult Books to intervene in the action as plaintiffs. All of the intervenors are Marion County businesses that were notified by HHC that they were in violation of the "open booth" provisions of § 19–311(b). They alleged that they would buy, make available or otherwise deal with constitutionally protected materials in Marion County. The intervenors further alleged that the ordinance will prevent them from doing so in the future.

Berg moved for summary judgment, contending that the ordinance violated his rights under the First Amendment. Although broadly contending that §§ 19–101.-1, 19–309, 19–310, 19–311(b) and (c), and the

regulations governing 19–311(b), violated the First Amendment, Berg declared that the "gravamen" of his complaint was the "open booth" provision of § 19–311(b). Berg argued that § 19–311(b) was an unconstitutional prior restraint on expressive activities in violation of the First Amendment. Alternatively, he argued that, if the ordinance did not constitute a prior restraint, it nevertheless was not a reasonable time, place, and manner restriction. Berg further argued that the ordinance was unconstitutionally overbroad and vague. HHC filed a cross-motion for summary judgment, seeking to have the ordinance declared constitutional.

The district court rejected Berg's claims and upheld the ordinance as a valid time, place, and manner restriction. The court further rejected Berg's overbreadth and vagueness arguments. Berg appeals the district court's grant of summary judgment in favor of HHC.

## II.

### A. *Prior Restraint*

As in the district court, Berg's appeal focuses on the "open booth" provision of § 19–311(b). He first argues that the district court erred in holding the "open booth" ordinance was not a prior restraint of speech prohibited by the First Amendment. According to Berg, the "open booth" provision constitutes a prior restraint because it "effectively bans" the showing of movies or other forms of entertainment in a commercial building with a door where the public is charged a fee for access, because it substantially restricts the availability of constitutionally protected material, and because the ordinance purports to give HHC the authority to close

businesses who fail to comply with § 19–311(b).

The ordinance manifestly is not a prior restraint. "Governmental action constitutes a prior restraint when it is directed to suppressing speech because of its content before the speech is communicated." *United States v. Kaun,* 827 F.2d 1144, 1150 (7th Cir.1987) (quoting *In re G. & A. Books, Inc.,* 770 F.2d 288, 296 (2d Cir.1985), *cert. denied, sub nom. M.J.M. Exhibitors, Inc. v. Stern,* 475 U.S. 1015, 106 S.Ct. 1195, 89 L.Ed.2d 310 (1986)). The Supreme Court has struck down regulations as unconstitutional prior restraints on speech where "public officials [have] the power to deny use of a forum in advance of actual expression." *See Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 553, 95 S.Ct. 1239, 1244, 43 L.Ed.2d 448 (1975). The Marion County ordinance simply does not ban the viewing of any forms of entertainment or grant officials the discretion to suppress any speech based upon its content. Berg is in no way restrained in his ability to sell books, movies, or other forms of entertainment so long as he complies with the ordinance. As the district court noted, "[t]he ordinance does not ban the viewing of films or other entertainment, but merely regulates the environment in which the viewing occurs." *Berg,* 667 F.Supp. at 642. *See also Broadway Books, Inc. v. Roberts,* 642 F.Supp. 486, 490 n. 2 (E.D.Tenn.1986) (open booth ordinance held not to constitute a prior restraint). The ordinance also does not require a person to obtain a license or a permit before exhibiting any particular form of speech.

Berg's prior restraint argument centers on HHC's ability to close an operation for failure to comply with the "open booth" provision.[4] The Supreme Court's

---

4. In further support of the argument that the ordinance constitutes an impermissible prior restraint, Berg asserts that the ordinance will have a "chilling effect" on those wishing to view entertainment behind closed doors. In other words, Berg contends that some people will choose not to watch certain entertainment at all rather than to do so in public—or at least without a door. This privacy-based argument is without merit. *Cf. Ellwest Stereo Theatres, Inc. v. Wenner,* 681 F.2d 1243, 1248 (9th Cir.1982).

Beyond that, there is no evidence that such a "chilling effect" will result. *Compare Doe v. City of Minneapolis,* 693 F.Supp. 774, 778 (D.Minn.1988) (affidavits submitted asserting that removal of doors would have such a "chilling effect"). In an affidavit attached to the complaint, Berg asserted only that the ordinance infringed upon *his* privacy rights because it could require the removal of his office door. This, however, is a distinct privacy interest from his patrons'. Moreover, the regulations specifi-

reasoning in *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 106 S.Ct. 3172, 92 L.Ed.2d 568 (1986), however, forecloses this argument. In *Arcara*, the owners of a bookstore argued that a New York statute authorizing the closure of a building determined to be a public nuisance violated their First Amendment rights. In the course of rejecting the plaintiffs' claims that the closure of the bookstore was entitled to First Amendment protection even though it violated the state statute, the Court specifically rejected the position that such a closure would constitute a prior restraint. The Court explained:

> The closure order sought in this case differs from a prior restraint in two significant respects. *First, the order would impose no restraint at all on the dissemination of particular materials, since respondent is free to carry on his bookselling business* at another location, even if such locations are difficult to find. Second, *the closure order sought would not be imposed on the basis of an advance determination that the distribution of particular materials is prohibited—indeed, the imposition or the closure order has nothing to do with any expressive conduct at all.*

478 U.S. at 705–06 n. 2, 106 S.Ct. at 3177 n. 2 (emphasis added). Thus, the mere fact that HHC has the authority to close a business because it violates the ordinance does not transform the ordinance into a prior restraint on expressive activities. The ordinance's application does not depend on an advance determination that the particular entertainment is permissible, and Berg remains free to carry on his business (albeit with open booths).

**B.** *Time, Place, And Manner Restriction*

■ We conclude, as have several other courts confronted with similar ordinances, that the proper constitutional measure here is whether the ordinance constitutes a valid time, place, and manner restriction. *See Wall Distributors, Inc. v. City of Newport*

*News,* 782 F.2d 1165 (4th Cir.1986); *Ellwest Stereo Theatres, Inc. v. Wenner,* 681 F.2d 1243 (9th Cir.1982); *Suburban Video, Inc. v. City of Delafield,* 694 F.Supp. 585 (E.D. Wis.1988); *Doe v. City of Minneapolis,* 693 F.Supp. 774 (D.Minn.1988); *Broadway Books, Inc. v. Roberts,* 642 F.Supp. 486. We will assume—because it is not an issue in this case—that the material viewed in the booths is protected by the First Amendment. "To sustain a time, place, and manner restriction on First Amendment activities, the government must show that the restriction (1) is content-neutral, (2) serves a legitimate governmental objective, (3) leaves open ample alternative channels of communication, and (4) is narrowly tailored to serve the governmental objective." *City of Watseka v. Illinois Public Action Council,* 796 F.2d 1547, 1552 (7th Cir.1986), *aff'd,* 479 U.S. 1048, 107 S.Ct. 919, 93 L.Ed.2d 972 (1987).

■ Under the time, place, and manner analysis, other courts have consistently upheld "open booth" ordinances as valid exercises of state police power. *See Wall Distributors, Inc., supra; Ellwest, supra; Suburban Video, supra; Doe v. City of Minneapolis, supra; Broadway Books, supra.* Likewise, we find no constitutional infirmity in Ordinance 5–1985(A).

There can be no doubt that the first two elements of the time, place, and manner test are met. The ordinance is clearly content-neutral; it makes no distinction between types of films or entertainment. Thus, it "would apply to a showing of 'Rebecca of Sunnybrook Farm' as well as any other film or performance. The ordinance regulates only the non-communicative aspects relating to the environment in which such material may be disseminated or received, and thereby 'imposes only an incidental burden' on plaintiffs' first amendment rights." *Doe v. City of Minneapolis,* 693 F.Supp. at 780 (construing an ordinance patterned on the Marion County ordinance at issue in this case). Indeed, the ordinance by its terms applies to all

cally provide that the ordinance is inapplicable to private offices, thus making moot Berg's pri-

vacy claim.

such enclosed booths, regardless of the type of film shown. *Ellwest*, 681 F.2d at 1245 n. 2. The ordinance is not directed at the content of the films or the type of entertainment which might be viewed in the booths; rather, it is directed at the booth's "secondary effects," namely the possible spread of AIDS through the anonymous sexual activity which may occur there. *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47, 106 S.Ct. 925, 929, 89 L.Ed.2d 29 (1986). *See also Wall Distributors, Inc.*, 782 F.2d at 1169.

The ordinance also serves a legitimate governmental objective. HHC has the responsibility "[t]o protect, promote or improve public health" and to "control disease" within Marion County. Ind.Code § 16–12–21–28 3(i). Ordinance 5–1985(A) is clearly consistent with that mandate. Further, combating the spread of a deadly disease which has no known cure doubtless constitutes a legitimate governmental objective. *Cf. City of Watseka*, 796 F.2d at 1554 (protecting peace and quiet and preventing crime an "obvious" legitimate governmental objective).

Moreover, the "open booth" ordinance leaves ample alternative channels of communication.[5] Here we consider "methods of communication" and ask "whether those methods not prohibited by the challenged regulation" (viewing the films, etc., with an open door) "are equivalent to the prohibited methods" (viewing the films, etc., behind a closed door). *Wisconsin Action Coalition v. City of Kenosha*, 767 F.2d 1248, 1254 n. 3 (7th Cir.1985). There is absolutely nothing in the ordinance limiting the availability of films or other entertainment. The ordinance does not bar people from watching films or entertainment in individual enclosures. The viewing public is in no way "denied access to the market ... or ... unable to satisfy its appetite for sexually explicit fare." *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 62, 96 S.Ct. 2440, 2448, 49 L.Ed.2d 310 (1976). Persons who wish to watch entertainment in individual enclosures may continue to do so; their access to such films and other entertainment is not substantially impaired by the removal of doors on the booths. Plainly, for First Amendment purposes, an open booth is the equivalent to a closed booth, so far as viewing materials is concerned.

Lastly, the ordinance is narrowly tailored to serve the governmental objective. *City of Watseka*, 796 F.2d at 1552. Whether an enactment is narrowly tailored really involves two separate inquiries. First, there must be a significant relationship between the ordinance and the governmental interest. *Id.* at 1554; *City of Kenosha*, 767 F.2d at 1257. Second, less restrictive alternatives must be inadequate to protect the governmental interest. *City of Watseka*, 796 F.2d at 1554.

Berg contends there is no connection between the ordinance and the served interest. He argues that HHC has not established that anyone has contracted AIDS from a commercial enterprise such as those in the instant suit or, for that matter, in Marion County. The proof Berg would require—specifically identifying such a commercial enterprise as the place where one contracted AIDS—is probably not possible in such exact terms, or if possible, would be exceedingly difficult to establish; however, it is also not necessary. HHC was entitled to rely on the experiences of other communities and it need only demonstrate that the evidence relied upon was "reasonably believed to be relevant to the problem" that it was addressing. *City of Renton*, 475 U.S. at 51–52, 106 S.Ct. at 931; *Doe v. City of Minneapolis*, 693 F.Supp. at 781; *Broadway Books*, 642 F.Supp. at 491. Thus, it was entirely proper to rely on the more general information which HHC considered.

When HHC adopted Ordinance 5–1985(A), it had information concerning the incidence of AIDS in Marion County, its rapid increase in other cities, its incurable, fatal nature, its transmission via multiple,

---

5. As we have explained elsewhere, the "ample alternative channels" factor of the time, place, and manner analysis differs from the "less restrictive alternatives" prong of the "narrowly tailored interest" factor. *Wisconsin Action Coalition v. City of Kenosha,* 767 F.2d 1248, 1254 n. 3 (7th Cir.1985).

anonymous sexual encounters, and about the casual sexual activity, including anal intercourse, observed in the types of local establishments sought to be regulated. Further, HHC heard testimony from a health professional who testified that the ordinance was an important step in the prevention of unsafe sexual practices and, thus, in the spread of AIDS. This information establishes a significant relationship between the ordinance and HHC's legitimate interest in fighting the spread of AIDS.

But to be narrowly tailored there also must be no less restrictive alternative which could serve the governmental interest. *City of Watseka*, 796 F.2d at 1554. This requirement is easily met here, as the ordinance "responds precisely to the substantive problem which legitimately concerns" HHC. *Id.* at 1553 (quoting *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 810, 104 S.Ct. 2118, 2131, 80 L.Ed.2d 772 (1984)). As the Fourth Circuit observed in regard to a similar enactment:

> [t]he open booth regulation appears to be the least burdensome means of controlling offensive and illegal activity within booths that can be imagined. The regulation in no way limits the time of operation, number of booths, or content of exhibitions. We conclude that the regulation is ... narrowly tailored to serve the specific interest advanced by the City....

*Wall Distributors, Inc.*, 782 F.2d at 1170.[6] Moreover, we decline to engage in speculation as to other possible alternatives which HHC might have employed to fight the spread of AIDS. In both *City of Watseka* and *City of Kenosha*, where we did consider alternatives to the challenged enactments, there already existed less restrictive alternatives which could adequately protect the articulated interests at issue. There is nothing similar found in the record here.

This case is also unlike *Doe v. City of Minneapolis, supra,* where the ordinance's challengers proffered specific alternatives to the open booth ordinance (a one-person-one-booth restriction, or the removal of the bottom 24 inches of the door as opposed to the entire door). Berg identified no less restrictive alternatives, nor do we think any exist.

### III.

Berg also contends that the ordinance is unconstitutionally overbroad and vague. We disagree.

■ The ordinance is overbroad, Berg argues, because it could be applied to rooms where activities such as watching movies or plays or reading books and magazines take place as opposed to high-risk sexual activity. An overbroad enactment "sweeps within its prohibitions [that which] may not be punished under the First and Fourteenth Amendments." *Grayned v. City of Rockford,* 408 U.S. 104, 115, 92 S.Ct. 2294, 2302, 33 L.Ed.2d 222 (1972). An ordinance or statute may be invalidated on its face only if the overbreadth is substantial. *Board of Airport Commissioners v. Jews for Jesus, Inc.,* 482 U.S. 569, 107 S.Ct. 2568, 2571, 96 L.Ed.2d 500 (1987); *Broadrick v. Oklahoma,* 413 U.S. 601, 615, 93 S.Ct. 2908, 2917, 37 L.Ed.2d 830 (1973); *United States v. Rodgers,* 755 F.2d 533, 542 (7th Cir.1985), *cert. denied,* 473 U.S. 907, 105 S.Ct. 3532, 87 L.Ed.2d 656 (1985). "[T]he overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick,* 413 U.S. at 615, 93 S.Ct. at 2918. "[T]here must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." *Members of the City Council v. Taxpayers for Vincent,* 466 U.S. 789, 801, 104 S.Ct. 2118,

---

6. The Fourth Circuit's reasoning was in connection with the final factor of the time, place, and manner analysis as articulated in *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), namely, that the restriction on First Amendment interests be no greater than is essential to achieve the interest advanced by the government. *Wall Distributors, Inc.,* 782 F.2d at 1170. This is completely consistent with our "less restrictive alternative" factor. *City of Watseka,* 796 F.2d at 1554 (citing *U.S. v. O'Brien* ).

2126, 80 L.Ed.2d 772 (1984). *See also Board of Airport Commissioners v. Jews for Jesus, Inc.,* 482 U.S. 569, 107 S.Ct. at 2571 (quoting *Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 503, 105 S.Ct. 2794, 2801, 86 L.Ed.2d 394 (1985)). However, even where an ordinance "appears overbroad because of its ambiguity [it] should not be struck down if it is subject to a reasonable limiting instruction." *U.S. v. Rodgers,* 755 F.2d at 542.

The ordinance by itself or through its regulations specifically excludes its application to private business offices or to hotels and motels. As the district court found, the regulation and the ordinance when read together limit the "open booth" provision's application to private or individual enclosures in which entertainment is sold as part of a business on commercial premises. This is sufficiently tailored to fend off an overbreadth challenge. Moreover, as we elsewhere have stated, the ordinance is precisely aimed at matters within HHC's power to regulate, and it achieves its end without encroaching on First Amendment rights. *Broadway Books, Inc.,* 642 F.Supp. at 490 n. 2.

■ Nor is the ordinance unconstitutionally vague. Essentially Berg argues that the ordinance does not clearly define the particular premises to which it applies, leaving this determination to the individual discretion of enforcement officers. "[A]n enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford,* 408 U.S. at 108, 92 S.Ct. at 2298. Laws must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Id.; Baer v. City of Wauwatosa,* 716 F.2d 1117, 1124 (7th Cir.1983). But enactments need not provide "meticulous specifics" or mathematical precision; they are permitted "flexibility and reasonable breadth." *Grayned v. City of Rockford,* 408 U.S. at 110, 92 S.Ct. at 2300. When evaluating a facial challenge to an ordinance, we must consider any limiting construction that an enforcement agency proffers. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494 n. 5, 102 S.Ct. 1186, 1191 n. 5, 71 L.Ed.2d 362 (1982).

Read as a whole, the ordinance and its regulations plainly are directed at those establishments which provide individual booths where high-risk sexual activity may occur and to businesses that offer as part of their business the entertainment to be viewed within the enclosure. And, although the term "entertainment" is arguably general, when read in the particular context of this ordinance, it cannot be said that it is beyond the grasp of persons of ordinary intelligence. *Grayned v. City of Rockford,* 408 U.S. at 108, 92 S.Ct. at 2298; *Broadway Books, Inc.,* 642 F.Supp. at 490 n. 2. In sum, we believe that persons of ordinary intelligence are capable of identifying those establishments subject to the ordinance.

## IV.

HHC's "open booth" ordinance is a valid and constitutional regulation serving a legitimate governmental interest, and it is neither so vague nor overbroad as to be unconstitutional. For the foregoing reasons, the district court is in all respects

AFFIRMED.

### APPENDIX A

#### Legislative Finding

Sec. 19–101.1. It is hereby further found that there exist within Marion County, Indiana, commercial premises, commercial structures or parts thereof, which by reason of the design, and intended use of such premises or structures or parts thereof are conducive to the spread of communicable disease found to be of danger to persons frequenting such premises, structures, or parts thereof, and to the public health, safety and welfare. The health, safety and welfare of all persons in Marion County must be protected by the establishment of standards for such premises, structures, or parts thereof, to eliminate the possibility of infection of contagious disease. Of specific danger is the sexually transmissible disease of Acquired Immune Deficiency Syndrome, which is currently found to be irreversible and uniformly fa-

tal. The incidence of this disease is found to occur in discernible population groups, and the risk factors for obtaining or spreading the disease are associated with high-risk sexual conduct with multiple partners. The commercial premises, structures, or parts thereof, which place persons at risk of infection from this disease due to their design or intended use for high-risk sexual conduct, are necessarily subject to regulation and minimal standards for the prevention of the spread of this disease and for the protection of the public health, safety and welfare.

Sec. 19–309. No commercial building, structure, premises or subdivision, partition, portion or part thereof or facilities therein, shall be so constructed, used, or operated for the purpose of sexual activities, in which facilities high-risk sexual conduct takes place. No commercial building, structure, premises or subdivision, partition, or portion shall be designed for or used to promote high-risk sexual conduct.

Sec. 19–310. In exercising powers conferred by this, or any other, section of the Code relating to communicable disease, the health officer shall be guided by the most recent instructions, opinions and guidelines of the Center for Disease Control of the United States Department of Health and Human Services which relate to the spread of infectious diseases and any regulations which may be adopted by this Board which relate to controlling the spread of infectious diseases.

Sec. 19–311. Minimum standards for prevention of certain communicable diseases in commercial premises.

No person shall occupy any commercial building, structure, premises, or portion or part thereof, which does not comply with the following requirements:

(a.) For the prevention of the spread of sexually transmitted disease, no partitions between subdivisions of a room, portion or part of a building, structure or premises may have an aperture which is designed or otherwise constructed to encourage sexual activity between persons on either side of the partition.

(b.) No booths, stalls, or partitioned portions of a room, or individual rooms, used for the viewing of motion pictures or other forms of entertainment, shall have doors, curtains or portal partitions, but all such booths, stalls, partitioned portions of a room, or individual rooms so used shall have at least one side open to an adjacent public room so that the area inside is visible to persons in the adjacent public room. All such described areas shall be lighted in such a manner that the persons in the areas used for viewing motion pictures or other forms of entertainment are visible from the adjacent public rooms, but such lighting shall not be of such intensity as to prevent the viewing of the motion pictures or other offered entertainment.

(c.) No commercial building, structure or premises shall be so constructed that private rooms or accommodations can be offered to patrons of that business operated therein if:

(1.) The building, structure or premises is in violation of Sec. 19–309, above; and

(2.) The building, structure or premises is not a validly operating hotel, motel, apartment complex or condominium.

## APPENDIX B

SECTION 19–311(b):

(1) The words "booth, stalls, partitioned portions of a room or individual rooms" mean such enclosures as are specifically offered to the public or members of that establishment for hire or for a fee as part of a business operated on the premises which offers as part of its business the entertainment to be viewed within the enclosure; which shall include, without limitation, such enclosures wherein the entertainment is dispensed for a fee, but a fee is not charged for mere access to the enclosure.

(2) The words "booths, stalls, partitioned portions of a room or individual rooms" do not mean such enclosures that are private offices used by the owners, managers or persons employed on the premises for attending to the tasks of their employment, which enclosures are not held out to the pub-

lic or members of the establishment for hire or for a fee or for the purpose of viewing entertainment for a fee, and are not open to any persons other than employees.

(3) The words "doors, curtains or portal partitions" mean full, complete, non-transparent closure devices through which one cannot see or view the activity taking place within the enclosure.

(4) The words "open to an adjacent public room so that the area inside is visible to persons in the adjacent public room" shall mean either the absence of any "door, curtain or portal partition" or a door or other device which is made of clear, transparent material such as glass, plexiglass or other such material meeting building code and safety standards, extending from the floor to the top of the door frame, exclusive of the door or device framing itself, so that the activity inside the enclosure may be viewed or seen by persons outside the enclosure.